STATE of South Dakota, Plaintiff
and Appellant,

v.

Mason Henry NEVILLE, Defendant
and Appellee.

No. 13260.

Supreme Court of South Dakota.

Considered on Briefs May 26, 1983.

On Rehearing March 14, 1984.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

David R. Gienapp of Arneson, Issenhuth & Gienap, Madison, for defendant and appellee.

MORGAN, Justice (on rehearing).

This case is before this court on remand from the United States Supreme Court. *South Dakota v. Neville,* 459 U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). State

appealed a state circuit court order suppressing evidence of appellant Mason Henry Neville's (Neville) refusal to submit to a blood-alcohol test and we affirmed. *State v. Neville*, 312 N.W.2d 723 (S.D.1981). The Supreme Court granted certiorari and reversed and remanded. We affirm in part, reverse in part, and remand our decision in *State v. Neville, supra.*

On July 19, 1980, two Madison, South Dakota, police officers observed Neville's failure to stop for a stop sign. The police officers stopped Neville and, after he failed at least two field sobriety tests, arrested him for driving while intoxicated. After advising Neville of his *Miranda* rights, the arresting officer asked him to submit to a blood-alcohol test. Neville refused to submit to the test, stating "I'm too drunk, I won't pass the test." Neville subsequently moved to suppress any and all evidence of his refusal and the circuit court ordered the evidence of his refusal suppressed. We affirmed, holding that SDCL 32–23–10.1 [1] violated both the federal and state constitutions. The Supreme Court held that this statute does not violate the federal constitution and reversed and remanded for proceedings not inconsistent with its opinion. We now review this case on remand.[2]

In examining *South Dakota v. Neville, supra,* we will focus upon three issues: (1) Whether a refusal to take a blood test is physical or testimonial evidence and, if the former, not protected by the privilege against self-incrimination; (2) whether physical or moral coercion which is impermissible under the protection against self-incrimination was involved; and (3) whether the warning given to Neville met due process requirements.

■ Initially, we address the issue of jurisdiction raised by the Supreme Court. It is well established that the Supreme Court will not take jurisdiction of a state court judgment that rests on an adequate and independent state ground. *Herb v. Pitcairn*, 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 (1945). In its review of *Neville*, the Court found that although there was an adequate state ground for our decision, it did not "read the opinion as resting on an *independent* state ground." 459 U.S. at —— n. 5, 103 S.Ct. at 919 n. 5, 74 L.Ed.2d at 754 n. 5 (emphasis in original).

■ As we stated in *State v. Opperman*, 247 N.W.2d 673 (S.D.1976), "[w]e have always assumed the independent nature of our state constitution regardless of any similarity between the language of that document and the federal constitution." *Id.* at 674. *Accord, People v. Pettingill*, 145 Cal.Rptr. 861, 21 Cal.3d 231, 578 P.2d 108 (1978); *People v. Williams*, 93 Misc.2d 93, 402 N.Y.S.2d 289 (1978); *Miller v. State*, 584 S.W.2d 758 (Tenn.1979). Although federal cases may be persuasive, they are not controlling. *See, e.g., Redmond v. Ray*, 268 N.W.2d 849 (Iowa 1978); *Spector v. State*, 289 Md. 407, 425 A.2d 197 (1981); *Clark v. Uniroyal Corp.*, 119 Mich. App. 820, 327 N.W.2d 372 (1982); *Neal v. School Dist. of York*, 205 Neb. 558, 288 N.W.2d 725 (1980); *In re Clark*, 281 S.E.2d 47 (N.C.1981).

■ While the Supreme Court determined that evidence of an accused's refusal to take a blood test does not infringe upon Fifth Amendment rights, their decision is not controlling of our decision herein. We alone determine the extent of protection afforded under our state constitution. Not only are we the final authority on interpre-

---

1. SDCL 32–23–10.1 provides:
   If a person refuses to submit to chemical analysis of his blood, urine, breath or other bodily substance, as provided in § 32–23–10, and that person subsequently stands trial for driving while under the influence of alcohol or drugs, as provided in § 32–23–1, such refusal may be admissible into evidence at the trial.

2. We note these proceedings have been the subject of legal commentaries. Arenella, *Schmer-*

*ber and The Privilege Against Self-Incrimination: A Reappraisal*, 20 Am.Crim.L.Rev. 31 (1982); Crump, *Admission of Chemical Test Refusals After South Dakota v. Neville: Drunk Drivers Can't Take the Fifth*, 59 N.D.L.Rev. 349 (1983); Comment, The New Kansas Drunk Driving Law: A Closer Look, 31 U.Kan.L.Rev. 409 (1983); *Note, State v. Neville: The Giving of a Meaningful Choice to the Accused*, 27 S.D.L.Rev. 300 (1982).

tation of our state constitution, but also, as stated by the Supreme Court, "[i]t is elementary that states are free to provide greater protections in their criminal justice system than the Federal Constitution requires." *California v. Ramos,* 459 U.S. 1301, 103 S.Ct. 285, 74 L.Ed.2d 19 (1982) quoted in *State v. Holmes,* 338 N.W.2d 104 (S.D.1983); *Opperman, supra; Reeves v. State,* 599 P.2d 727 (Alaska 1979); *Bierkamp v. Rogers,* 293 N.W.2d 577 (Iowa 1980); *People v. Hoshowski,* 108 Mich.App. 321, 310 N.W.2d 228 (1981); *State v. Flores,* 280 Or. 273, 570 P.2d 965 (1977); *Miller v. State, supra.* Thus, as we stated in *Opperman, supra,* "we have the right to construe our state constitutional provision in accordance with what we conceive to be its plain meaning." 247 N.W.2d at 674–75.

We direct attention to the distinction between the state and federal constitutional provisions. Article VI, § 9 of the South Dakota Constitution states: "No person shall be compelled in any criminal case *to give evidence* against himself ...." (Emphasis supplied.) In contrast, the Fifth Amendment to the United States Constitution states: "No person ... shall be compelled, in any criminal case, *to be a witness* against himself ...." (Emphasis supplied.) The constitutions of twenty-four states protect a person from giving "evidence" against himself. *Hansen v. Owens,* 619 P.2d 315 (Utah 1980) (J. Stewart dissenting). *See, e.g.,* Ariz. Const. art. II, § 10; Conn. Const. art. I, § 8; Ill. Const. art. I, § 10; Ky. Const. § 11; Maine Const. art. I, § 6; Miss. Const. art. III, § 26; Neb. Const. art. I, § 12; N.C. Const. art. I, § 23; Okla. Const. art. II, §§ 21, 27; Penn. Const. art. I, § 9; Utah Const. art. I, § 12.

State court decisions interpreting these provisions are split as to whether there is a distinction arising out of the particular language employed. Some of these decisions note the difference but do not conclude there is a distinction. *See, e.g., Hill v. State,* 366 So.2d 318 (Ala.1979); *In re Parker,* 357 So.2d 508 (La.1978); *State v. Tullo,* 366 A.2d 843 (Me.1976).

Other decisions conclude there is not a distinction, *see, e.g., State v. Tsavaris,* 382 So.2d 56 (Fla.App.1980); *McCrory v. State,* 342 So.2d 897 (Miss.1977), while others conclude there is a distinction. *Hansen, supra; Clark v. State,* 336 So.2d 468, *aff'd* 363 So.2d 331 (Fla.App.1976). As the majority opinion in *Hansen* states,

the phrase "to give *evidence* against himself," as used in our constitution, was intended to mean something different and broader than the phrase "to be a *witness* against himself" as used in the federal constitution.

619 P.2d at 317. As the final authority on our state constitution, we now turn to examine our opinion in *State v. Neville, supra.*

The question we address here is whether SDCL 32–23–10.1 is a violation of Neville's state constitutional privilege against self-incrimination. As we stated in *State v. Neville:* "All presumptions are in favor of the constitutionality of a statute until the contrary is shown beyond a reasonable doubt. This presumption results in a heavy burden being placed on the assailant." 312 N.W.2d at 725 (citations omitted).

We first examine whether a refusal to take a blood test is physical or real evidence and accordingly is not protected by the privilege against self-incrimination. The privilege against self-incrimination extends only to communicative or testimonial evidence. *Loveless v. State,* 592 P.2d 1206 (Alaska 1979). It is generally accepted that real or physical evidence such as fingerprints, photographs and voice or handwriting samples are not protected by this privilege. *See, e.g., Lusk v. State,* 367 So.2d 1088 (Fla.App.1979); *Anderson v. Com.,* 554 S.W.2d 882 (Ky.App.1977); *State v. Sanders,* 357 So.2d 1089 (La.1978). We note the majority of states whose constitutions contain the same language as ours, have concluded the privilege against self-incrimination does not apply to obtaining breathalyzer or other chemical evidence. *See, e.g., Davis v. State,* 174 Ind. App. 433, 367 N.E.2d 1163 (1977); *State v.*

*Smith,* 359 So.2d 157 (La.1978); *State v. Swayze,* 197 Neb. 149, 247 N.W.2d 440 (1976); *State v. Flannery,* 31 N.C.App. 617, 230 S.E.2d 603 (1976). Our decisions agree. *State v. Maher,* 272 N.W.2d 797 (S.D.1978). As we stated in *Maher,* "the United States Supreme Court held in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the protection of the Fifth Amendment goes only to testimonial or communicative evidence and does not protect one from being compelled to produce nontestimonial evidence." 272 N.W.2d at 799.

Some courts have held that, since the testing of bodily evidence does not violate this privilege, testimony of refusal to give such evidence does not violate this privilege. *State v. Smith, supra.* The reasoning utilized in reaching this conclusion is that refusal to submit is a physical act rather than a communication and thus not protected by this privilege. *Hill v. State, supra.* We disagree.

■ In *State v. Neville, supra,* we concluded that under our state constitution a defendant's refusal may be characterized as communicative evidence. In examining this issue in *Neville,* the Supreme Court recognized that "the distinction between real or physical evidence, on the one hand, and communications or testimony, on the other, is not readily drawn in many cases," 459 U.S. at ——, 103 S.Ct. at 922, 74 L.Ed.2d at 757, but refused to address this issue. As we stated in *State v. Neville, supra,* "[a] defendant's silence or refusal to submit to a requested blood test is a tacit or overt expression and communication of defendant's thoughts." 312 N.W.2d at 726. *See Dudley v. State,* 548 S.W.2d 706 (Tex.Cr.App.1977). On review, we agree with this, our previous statement. Accordingly, we affirm our holding in *State v. Neville, supra,* that Neville's refusal to submit to a blood test is evidence of a testimonial nature and thus within the protection of the privilege against self-incrimination.

■ We now must examine whether impermissible coercion was involved for pur-

poses of applying the privilege against self-incrimination. The rule against impermissible coercion is founded upon the language of our state constitution, which provides: "No person shall be *compelled* in any criminal case to give evidence against himself . . . ." S.D. Const. art. VI, § 9 (emphasis supplied). This provision does not prohibit all self-incriminating evidence; it prohibits only that communicative or testimonial evidence that has been compelled. In *State v. Neville, supra,* we agreed with the rationale of the Minnesota Supreme Court in *State v. Andrews,* 297 Minn. 260, 212 N.W.2d 863 (1973), and held that the state compelled Neville to produce the testimonial evidence of his refusal to take the test. Upon re-examination of our holding, we take the contrary view.

■ Compulsion proscribed by our constitution includes both physical and moral compulsion exerted by the State. Physical compulsion is not in issue here. Moral compulsion may be exerted by the State attaching a penalty, punishment, or detriment for the selection of the alternate course of action where no other justification exists for such imposition and of which the defendant is therefore entitled to be free. If a defendant produces self-incriminating evidence to escape unwarranted consequences, that evidence is considered compelled and thus constitutionally inadmissible. *People v. Thomas,* 46 N.Y.2d 100, 412 N.Y.S.2d 845, 385 N.E.2d 584 (1978).

For example, it is impermissible to comment on a defendant's failure to take the witness stand during criminal trial, which is the alternative to silence. The alternative to silence is submission to interrogation under oath by the prosecution likely resulting in either giving testimony against himself or perjuring himself. Commenting on a defendant's silence would impose a penalty for exercising a constitutional privilege. *Thomas,* 412 N.Y.S.2d at 849, 385 N.E.2d at 588.

■ But *Thomas* distinguishes between such impermissible compulsion and the

compulsion present in this case, where the issue is admissibility of the *refusal*. The statutory scheme of the legislation originally enacted in 1959, 1959 S.D.Sess.L. ch. 264 § 1, and as recently amended in 1983, 1983 S.D.Sess.L. ch. 224 § 5, is to compel the defendant to *take the test*. A refusal now has two penalties: (1) the license revocation as originally prescribed, SDCL 32–23–10, and (2) the disclosure of refusal in the prosecution. SDCL 32–23–10.1. The alternative to refusal is the option to submit to the test, which option would involve no penalty or consequences. Prior to the 1982 amendment, this court had long recognized the existence of the choice available to the arrested driver as between submission the test or forfeiture of license:

> Implicit in our implied consent statute, however, is the right to refuse to submit to a test ·and, a fortiori, the requirement that a choice be made between submitting to the test or suffering the consequences of such refusal. Also implicit in the implied consent law is the assumption that the choice to be made is of considerable importance to the arrested driver.

*State v. Buckingham*, 90 S.D. 198, 204–5, 240 N.W.2d 84, 87 (1976) (citations omitted). *See State v. Oswald*, 90 S.D. 342, 241 N.W.2d 566 (1976). The fact that the option of refusing the blood-alcohol test now has an additional penalty for making that choice does not make that additional penalty impermissible coercion. Thus, since the conduct, i.e., the refusal which is the subject of the challenged evidence was not compelled and a defendant has, in fact, an option to submit to the test, the admission of this evidence is not prohibited by the constitutional protection against self-incrimination. Accordingly, SDCL 32–23–10.1 is constitutional in that it does not violate our state constitutional protection against self-incrimination. To that extent, we reverse our previous holding in *State v. Neville, supra.*

Inherent, however, in this constitutional protection against self-incrimination and also the protection of due process [3] is the requirement that an arresting officer must fully inform a defendant driver of the consequences of a refusal to submit to a blood-alcohol test. *See, e.g., People v. Thomas, supra; State v. Buckingham, supra; Chmelka v. Smith*, 81 S.D. 40, 130 N.W.2d 423 (1964). Below, the arresting officer informed Neville of the *Miranda* warnings [4] but then only partially informed him of the consequences attendant to the refusal of the request for submission to a blood-alcohol test.[5] The arresting officer did not warn Neville that the test results could be used against him at trial. In its brief, State admits that "the Defendant should have been warned that his refusal

---

**3.** S.D. Const. art. VI, § 2, states: "No person shall be deprived of life, liberty or property without due process of law."

**4.** The officer read the *Miranda* warning from a printed card which stated: "You have the right to remain silent. You don't have to talk to me unless you want to do so. If you want to talk to me I must advise you whatever you say can and will be used as evidence against you in court. You have the right to confer with a lawyer, and to have a lawyer present with you while you're being questioned. If you want a lawyer but are unable to pay for one, a lawyer will be appointed to represent you free of any cost to you. Knowing these rights, do you want to talk to me without having a lawyer present? You may stop talking to me at any time. You may also demand a lawyer at any time."

**5.** The officer read the warnings from a printed card which stated: "I have arrested you for driving or being in actual physical control of a vehicle while under the influence of alcohol or drugs, a violation of S.D.C.L. 32–23–1. I request that you submit to a chemical test of your blood to determine your blood alcohol concentration. You have the right to refuse to submit to such a test and if you do refuse no test will be given. You have the right to a chemical test by a person of your own choosing at your own expense in addition to the test I have requested. You have the right to know the results of any chemical test. If you refuse the test I have requested, your driver's license and any non-residence driving privilege may be revoked for one year after an opportunity to appear before a hearing officer to determine if your driver's license or non-residence driving privilege shall be revoked. If your driver's license or ·non-residence driving privileges are revoked by the hearing officer, you have the right to appeal to Circuit Court. Do you understand what I told you? Do you wish to submit to the chemical test I have requested?"

could be used as evidence in a subsequent DWI trial ..." but argues that this failure did not violate Neville's due process rights. We disagree. The very consequence of which the arresting officer failed to warn Neville is that consequence which the State now seeks to impose. Since Neville was not fully informed of this consequence, he did not voluntarily, knowingly and intelligently waive his constitutional protection of due process and prohibition against self-incrimination. Accordingly, we affirm the trial court's holding that Neville's refusal to submit to the blood-alcohol test is inadmissible.

■■■ In *State v. Neville, supra,* we remanded to the trial court the determination of the admissibility of Neville's response "I'm too drunk, I won't pass the test." We now reconsider that remand in light of our preceding decision on due process. Under the circumstances before us in this particular case, where Neville made this statement in response to the police officer's request to submit to the blood-alcohol test, the admissibility of this statement is inextricably intertwined with the admission of Neville's refusal to take the test. As previously noted the police officer failed to warn Neville of all the consequences of his refusal. In refusing to take the test, Neville made the statement which the State now seeks to admit. Since the statement contains the substance of Neville's refusal to submit to the test, admission of the statement would contradict our holding above that Neville's refusal to submit to the test must be suppressed for failure to adequately advise him. We affirm the trial court's holding that this statement is inadmissible.

We affirm in part and reverse in part our previous decision in *State v. Neville, supra,* and remand to the trial court for further proceedings.

FOSHEIM, C.J., and WOLLMAN, J., concur.

DUNN, J., concurs in result.

HENDERSON, J., concurs in part and dissents in part.

DUNN, Justice (concurring in result).

I concur in the result.

I would hold, however, that SDCL 32–23–10.1 is violative of the self-incrimination provisions of S.D. Const. art. VI, § 9, for all of the reasons stated in the original decision in *State v. Neville,* 312 N.W.2d 723 (S.D.1981). Even though SDCL 32–23–10.1 does not infringe upon rights in the United States Constitution, *South Dakota v. Neville,* 459 U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), this state is free to provide greater protections under our state constitution than are required under the federal constitution. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

The option afforded under the old statute (SDCL 32–23–11) involved a defendant losing his driving privileges for one year upon refusal to submit to a chemical test; we have determined this to be constitutional because no one has the "right" to drive. *Peterson v. State,* 261 N.W.2d 405 (S.D. 1977); *Beare v. Smith,* 82 S.D. 20, 140 N.W.2d 603 (1966); *Chmelka v. Smith,* 81 S.D. 40, 130 N.W.2d 423 (1964) (driving is a privilege granted by the State which is subject to reasonable regulation under the police power). The present statute, on the other hand, goes far beyond revocation of driving privileges and provides that upon refusal to take a chemical test, such refusal can be used against the defendant in a criminal trial. While no one has a "right" to drive, a defendant in a criminal trial does have a state constitutional right not to be compelled to give evidence against himself. SDCL 32–23–10.1 forces a defendant to either take the test (the results of which can be used against him at a criminal trial) or refuse the test, with the result that this very damaging evidence of refusal can be used against him at trial. Therefore, SDCL 32–23–10.1 is not just an "additional penalty" for making the choice of not taking the chemical test; it goes to the very heart of the constitutional right against self-incrimination.

HENDERSON, Justice (concurring in part, dissenting in part).

## CONCURRENCE IN PART

Agreeing that Neville was inadequately advised (warned) that the blood alcohol test would be used against him at trial, I would affirm the trial court's holding that the statement is inadmissible.

## DISSENT IN PART

I depart from the balance of the majority opinion which holds that SDCL 32–23–10.1 is constitutional as I am convinced that it does violate this state's constitutional protection against self-incrimination. Joining Justice Dunn, I would strike down this statute as being unconstitutional.

As the majority opinion has expressed, there is a pertinent difference between the Fifth Amendment of the United States Constitution and Article VI, § 9 of the South Dakota Constitution. I perceive that the United States Supreme Court would have this Court examine the South Dakota Constitution, with singular emphasis, and render an independent decision on our state constitution.

There can be little question but that the drafters of the South Dakota Constitution gave a broader protection by utilizing the word "evidence" rather than utilizing the word "witness" embraced in the United States Constitution. This Court should interpret the word "evidence" so that it has a realistic meaning. South Dakota, by precedent, has established that its highest court will grant protection to its citizens under the South Dakota Constitution independent from federal interpretation. South Dakota chose to not follow a federally oriented interpretation of its constitution. Rather, it chose to follow a state-specific interpretation. *See State v. Opperman*, 247 N.W.2d 673 (S.D.1976), a landmark case in America; *see also*, 95 Harv.L.Rev. 1324 (1982), for a treatise on this subject.

The constitution of this state was independently adopted and should be a document of independent force. As Justice Dunn has pointed out, in *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the United States Supreme Court has recognized that each state has the right to independently determine its own constitutional questions and, indeed, to grant a greater protection than required under the federal constitution. Therefore, the distinction between "evidence" and "testimony" is highly relevant in our determination. This Nation is a union of states and each state cannot depend upon the United States Supreme Court for constitutional direction on its state constitution. This state must keep within the intention and spirit of its constitution adopted in 1889. The United States Constitution obtained final ratification in 1791. Where there is a difference, we should stand up and state the difference and rule in accordance with the difference.

Foursquare before this Court is this question: Is SDCL 32–23–10.1 unconstitutional under the constitution of the State of South Dakota? A determination has been made by the United States Supreme Court that this statute was not unconstitutional under the Fifth Amendment of the United States Constitution. The United States Supreme Court does not have the power to disturb this Court's holding that SDCL 32–23–10.1 is unconstitutional under the constitution of the State of South Dakota. With that in mind, I find this statute to be unconstitutional. A coerced blood test is physical evidence. However, a coerced refusal of a blood test is testimonial evidence. Article VI, § 9, South Dakota Constitution provides: "No person shall be *compelled* in any criminal case *to give evidence against himself* ...." (Emphasis supplied.) Neville's oral statement, if submitted to a jury, is tantamount to giving evidence against himself and would preclude him from having a fair jury trial. An obvious reason for the State to get this testimonial evidence before the jury in any case is this: To influence the jury into believing that the accused obviously refused the test because he or she was under the influence of intoxicating liquor. With coercion, Mr. Prosecutor would seek to establish a "conscious-

ness of guilt" for any criminal defendant who refused the test, albeit for a variety of reasons. A "consciousness of guilt" under this statute would go before the jury even when the defendant elected to remain silent for, in South Dakota, it has been determined that saying nothing constitutes an absolute refusal to take the test. Inherently, as I view it, the question or demand to take the test, and the response thereto, is an incriminatory interrogatory. If an officer on direct examination answers "yes" to a question posed as to whether the defendant refused the test, implicit in that answer is "evidence" of a testimonial nature. The "refusal", in the eyes of the officer, might very well be a nod, a shrug of the shoulders, or an expression of negative disdain. Most importantly, however, implicit in that answer will be the unfair tipping of the scale of jury deliberation in favor of the State. This should not be for it is the State which bears the burden of proof and incrimination should not be compelled, under South Dakota's Constitution, whereby a citizen gives evidence against himself either by saying "no," saying nothing, shrugging his shoulders, nodding his head, or portraying an expression of negative disdain.

Therefore, I cannot subscribe to a concept of statutory manipulation to achieve results favorable to the State but at the expense of constitutional guarantees of the accused.

Interesting note: United States Supreme Court opinion in this case was written by Justice Sandra Day O'Connor. Justice O'Connor, while a judge in the State of Arizona, recognized the desire for a rule of law requiring more independent state determinations without the necessity of intruding into the federal courts. 22 Wm. & Mary L.Rev. 801 (1981).