STATE of Minnesota, Respondent,

v.

Paul Luther HEREM, Appellant.

No. C5-84-701.

Court of Appeals of Minnesota.

July 9, 1985.

Review Granted Oct. 3, 1985.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Michael Lynch, Kandiyohi County Atty., Willmar, for respondent.

Mark F. Uphus, Willmar, for appellant.

Considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

OPINION

RANDALL, Judge.

Appellant Paul Luther Herem appealed a jury verdict of guilty on three counts: fleeing a police officer, careless driving, and driving while under the influence. Appellant was sentenced on the counts of fleeing

a police officer and driving under the influence, but not on careless driving because of Minn.Stat. 609.035 (1983).

After conviction, appellant moved for motion of acquittal or a new trial, both of which were denied. Appellant appeals from the denial order solely on the constitutional issue relating to the admissibility of his statements made to the arresting officer. We reverse and remand for a new trial without appellant's statements made in the squad car.

## FACTS

On September 2, 1983, around midnight, a Kandiyohi County deputy sheriff, Stephen Marquardt ("Marquardt") observed appellant driving a motorcycle well over the speed limit on Highway 23. Marquardt activated his lights and siren and pursued appellant. Appellant increased his speed and passed several cars. Marquardt reached speeds up to 100 miles an hour before appellant slowed down and pulled over. Marquardt observed appellant and one passenger on appellant's motorcycle. Marquardt asked appellant for his driver's license, which appellant produced, and then Marquardt placed appellant in the back seat of his squad car.

While in the car, Marquardt observed appellant's watery and bloodshot eyes, an odor of alcohol and somewhat slurred speech. Marquardt asked appellant questions directly related to appellant's driving conduct, such as was appellant in a hurry and did he know he was speeding. To the speeding question appellant answered "yes." Marquardt asked appellant if he had seen the sheriff's car following him, if he had seen the squad car's rotating lights and if he had been drinking. Appellant answered affirmatively to these questions. Marquardt explained the roadside Preliminary Breath Test (PBT) to appellant and advised him relative to the PBT that it would not be used in court against him, and was just an indicator as to how much he had had to drink. Marquardt did not read appellant the *Miranda* warning prior to

questioning. Appellant took the PBT test and failed.

Marquardt then advised appellant that he would have to accompany the police officer to Willmar and that he was being placed under arrest for DWI. At the station appellant refused blood alcohol testing.

Appellant was then taken to the county jail for processing and was charged with fleeing a police officer, DWI, and careless driving. Appellant was later released to a friend who promised to drive him home.

At the jury trial, the court admitted appellant's statements to Marquardt into evidence over appellant's objections that they were the product of a custodial interrogation without proper *Miranda* warning.

## ISSUE

Whether statements taken by an officer from appellant during questioning in a squad car, from which appellant was not free to leave, without the *Miranda* warning are admissible against appellant?

## ANALYSIS

Appellant and respondent agree on the controlling law. The dispute arises over the single factual issue of whether appellant was "in custody" for purposes of determining whether he was entitled to a *Miranda* warning prior to making statements to the deputy sheriff.

Appellant cites *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) in part:

> By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*Id.* at 444, 86 S.Ct. at 1612.

Respondent cites another part of *Miranda:*

> Our decision is not intended to hamper the traditional function of police officers in investigating crime. * * * General on-the-scene questioning as to facts surrounding a crime or other general ques-

tioning of citizens in the fact-finding process is not affected by our holding. *Id.* at 477, 86 S.Ct. at 1629 (citations omitted).

Because the question of when a routine traffic stop turns into "custody" is subjective, the U.S. Supreme Court chose to review a case directly addressing traffic stops. *See Berkemer v. McCarty,* —— U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

The Supreme Court stated in part:

* * * the [Federal] Court of Appeals' judgment regarding time at which *Miranda* became applicable [to a traffic stop] is ambiguous * * * relevance of *Miranda* to questioning of a motorist detained pursuant to a traffic stop is an issue that plainly warrants [Supreme Court's] attention * * *.

*Id.,* 104 S.Ct. at 3148–3149, n. 23.

*Berkemer* held, among other things, that roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute custodial interrogation for purposes of *Miranda* rule. *Id.,* 104 S.Ct. at 3151. However, *Berkemer* went on to state: "If a motorist who has been detained pursuant to a traffic stop and thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda.*" *Id.* at 3151.

In *Berkemer* the defendant's car, after erratic movement, was stopped by an officer of the Ohio State Highway Patrol and the driver was asked to get out of the car. The officer immediately observed that the driver had difficulty standing. He made a mental observation that he was going to charge the driver with a traffic offense and that he would not allow the driver to leave the scene. However, he did not tell the driver that he would be taken into custody. The officer asked him to perform certain field sobriety tests on the shoulder of the highway, such as walking and stooping. The driver exhibited coordination problems.

The officer asked the driver if he had been using intoxicants and appellant's af-firmative answer included, "a few beers and the use of some marijuana." Only then was the driver formally arrested and driven to a county jail where a blood test failed to detect any alcohol in his blood. At the station the officer resumed questioning and the driver made additional incriminating statements. At no time, either during the questioning at the roadside or in the jail, was the driver given the proper *Miranda* warnings.

After a lengthy discussion of previous federal cases, the *Berkemer* court concluded that a strict rule—either requiring *Miranda* to be applied to all traffic stops (argued by the driver's counsel) or holding that a suspect need not be advised of his rights until formally placed under arrest (advocated by the prosecutor)—although desirable from an administration standpoint, would be unacceptable in the long run. The court ultimately held that the facts would need to be looked at on a case by case basis. *Berkemer,* 104 S.Ct. at 3151.

In *Berkemer,* from the facts, the Supreme Court concluded that the initial stop, even though it included a request by the officer to the driver to perform field sobriety tests outside the car and on the shoulder, was not "custodial interrogation" and thus did not require the reading of *Miranda.* On the other hand, they concluded that after he was arrested and driven to the station, the *Miranda* warning should have been given and the incriminating statements taken at the station house should have been suppressed.

Concluding that the driver's statements given to the police officer during the roadside stop were not statements taken while in custody, the court found that the driver did not have his freedom of action curtailed in a significant way nor to a degree associated with a formal arrest. *Berkemer* at 3151.

They found that the officer's intention to take the respondent into custody as soon as the car was stopped was not relevant as it had not been communicated to the driver and "the only relevant inquiry is how a

reasonable man in the suspect's position would have understood his situation." *Berkemer* at 3152. *See Beckwith v. United States,* 425 U.S. 341, 346, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976).

In *Berkemer* the court found that the arresting officer's merely asking the driver a modest number of questions and requesting him to perform a simple balancing test at a location visible to passing motorists could not be characterized as the functional equivalent of a formal arrest.

In this case, respondent argues that appellant was only subject to simple roadside questioning, thus the *Miranda* warning need not be given, and the trial judge properly admitted the statements over objection.

■ The trial court made a conclusion of law that these facts do not amount to a custodial interrogation. While the trial court is given deference in its role as a fact finder, appellate courts need not defer to the trial court in reviewing questions of law. *Van de Loo v. Van de Loo,* 346 N.W.2d 173 (Minn.Ct.App.1984) citing *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn.1977); *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

Placing appellant inside the squad car, keeping him there and not allowing him to leave while questioning him, constitutes a custodial interrogation. Therefore, even though the formal words "you are under arrest" were never spoken, appellant was the subject of custodial interrogation and thus entitled to a *Miranda* warning.

The factual setting supports this holding. At the omnibus hearing the arresting officer testified:

Q. (By appellant's attorney) And while you were asking these questions, the defendant—was he in the car, was he not free to leave?

A. (By arresting officer) I think the first ones were outside and then when I did bring him back, I can't remember if he was up in the front or in the back when we were talking.

Q. But in any case, he wasn't free to leave upon his stopping for you?

A. Not until I had finished talking to him.

After that exchange the trial court questioned the officer further about the order of events after the initial stop of the motorcycle and what was said. Following those questions by the court on recross examination, appellant's attorney stated to the officer: "You didn't verbally place him under arrest by saying, 'you are under arrest'?" The officer answered, "No, I did not." Then appellant's attorney asked, "But he was not free to go, is that true?" The officer answered, "Not until I finished with him, no."

While the officer and appellant were in the squad car, the officer elicited statements from appellant that appellant knew he had been speeding, that he knew the sheriff's car was following him, and that he had been drinking, inculpatory statements relative to charges of fleeing a police officer and driving while under the influence.

■ An officer is not required to give the *Miranda* warning until he has reasonable grounds to believe a crime has been committed and the defendant is the culprit. *State v. Kinn,* 288 Minn. 31, 178 N.W.2d 888, 891 (1970). In this case, at the time of the interrogation the officer believed appellant was driving under the influence and had committed other offenses. The officer held appellant in his squad car and would not let him leave until the officer had completed questioning appellant. "When it appears that, in the performance of his duties, the officer determines to take a person into custody, or, in other words, when the point is reached where the adversary system begins to operate, he is required to give the *Miranda* warning." *Id.,* 178 N.W.2d at 891.

In a similar case, where the officer questioned the defendant in the squad car and, after the defendant answered some questions, read him the *Miranda* warning, the Supreme Court held that defendant's state-

ments made in custody before the *Miranda* warning was given were inadmissible. *State v. Dakota,* 300 Minn. 12, 217 N.W.2d 748, 751 (1974).

The deciding factor is the defendant's freedom or lack of freedom during interrogation:

> [T]he test for determining the need for a *Miranda* warning is not whether the interrogation has coercive aspects to it or whether the investigation has focused on the person being questioned, but whether the person being questioned is in custody or is deprived of his freedom in any significant way.

*State v. Palm,* 299 N.W.2d 740, 741 (Minn. 1980).

It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest." *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) cited in *Berkemer v. McCarty, Id.*

In examining the holding of *Berkemer, Palm, Dakota,* and *Kinn* as to the necessity for *Miranda* warnings in roadside stops, we conclude that appellant was, in this case, subjected to custodial interrogation, questioned without being given the *Miranda* warning, and, thus, his statements to the deputy sheriff should have been suppressed.

This was more than a simple traffic stop. *See Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) cited in *Berkemer v. McCarty,* —— U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). We do not ignore the direct testimony of the arresting officer that appellant was placed in the squad car and was not free to leave until the officer had finished questioning him about the incidents which led to appellant's conviction.

### DECISION

Where the arresting officer placed appellant in a squad car and would not let him out until the officer had finished his ques-

tions about appellant's driving conduct, there was in custodial interrogation and the *Miranda* warning should have been given to appellant prior to the start of questioning. The trial court erred in allowing appellant's statements into evidence over objection.

Reversed and remanded for a new trial.