**Michael McGINTY, a/k/a McGinety, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 1058–84.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 19, 1986.

Lynn Sanders, Austin, for appellant.

Bill Turner, Dist. Atty. and Rodney Boyles, Asst. Dist. Atty., Bryan, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellant was convicted by a jury of the offense of driving while intoxicated (subsequent offense). See Art. 6701*l*–1(d), V.A.C.S. The jury subsequently assessed punishment at eighteen months confinement in the Brazos County Jail and a fine of $1,500.00.

Appellant raised four grounds of error in the Court of Appeals. That court affirmed the conviction. *McGinty a/k/a McGinety v. State*, unpublished (No. 10–84–021–CR, Tex.App.-Waco, Sept. 27, 1984). In that opinion, the Court of Appeals decided that the trial court was "ill advised" to instruct the jury on a definition of reasonable doubt, but that this did not result in harm to the appellant. In a separate ground of error, the Court of Appeals ruled that the appellant's refusal, in the instant case, to

take a chemical breath test was admissible in evidence against him. Appellant contests both of these rulings in two grounds for review. We affirm.

The facts of the case reveal that appellant was arrested on February 1, 1983, while driving southbound on Texas Avenue in College Station. Sgt. Alva Wayne Onstott, the arresting officer and only witness for the State, testified that he observed appellant's truck weaving back and forth while traveling on Texas Avenue. Onstott followed appellant approximately eleven blocks before pulling him over. Onstott smelled alcohol on appellant's breath and noticed that appellant swayed when he walked.

At this point, Onstott asked the appellant if he would consent to take a chemical breath test. The appellant agreed. Onstott then arrested the appellant for driving while intoxicated. When Onstott and the appellant arrived at the College Station Police Department, while they were at the booking desk, Onstott asked the appellant again if he would take the breath test. This time, the appellant refused. At trial, Onstott testified that he did not give the appellant "any warning". He also stated that, at the police department, he did not read the appellant the "D.P.S. D.W.I. warnings about the breathalyzer." Appellant requested the trial court to suppress anything the appellant said to Onstott because he did not receive his "Miranda warnings."[1] The trial court denied this request. At trial, over appellant's objection, Onstott testified that he asked the appellant at the booking desk to take the breath test, and the appellant "said that he didn't want to take it."

█ Appellant's first ground for review is that the trial court erred in defining "reasonable doubt" in the jury charge, over a timely objection. This Court does not approve of the definition of reasonable doubt as given in the trial court's charge to the jury. In fact, this Court has stated that the language of the statute on reason-

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

able doubt does not need amplification or an attempt by the trial court to explain the term. *Whitson v. State*, 495 S.W.2d 944, at 946 (Tex.Cr.App.1973). In Texas, only a non-definitional charge on reasonable doubt is normally given. This Court will not condone the giving of a charge on reasonable doubt that goes beyond that. *Young v. State*, 648 S.W.2d 2, at 4 (Onion, P.J., concurring) (Tex.Cr.App.1983). The trial court erred when it instructed the jury on its definition of reasonable doubt.

■ Appellant properly objected to the charge, see Art. 36.14, V.A.C.C.P. Therefore, the proper standard for determining if a reversal is required is whether appellant suffered some harm in light of the entire charge, the state of the evidence, argument of counsel, and any other relevant information. See *Almanza v. State*, 686 S.W.2d 157 at 171 (on State's Motion for Rehearing) (Tex.Cr.App.1985).

The portion of the charge that appellant complains of reads:

"A reasonable doubt is a doubt based on reason and common sense. 'A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act in the conduct of their more serious and important personal affairs. Proof beyond a reasonable doubt must, therefore, be of such a convincing character that you would be willing to rely and act upon unhesitantly in those most important of your own affairs.' "

■ We reviewed this error, in light of *Almanza*, to determine if it resulted in some harm to the appellant. The erroneous instruction favored the appellant, because it would impose a greater burden of proof upon the State to prove the guilt of the appellant. In the context of the entire trial, the trial court's instruction on the law of reasonable doubt did not result in harm to the appellant. The first ground for review is overruled.

Appellant's second ground for review states: Is evidence of breath test refusal admissible in pre–1984 DWI cases after *Neville v. South Dakota?* Officer Onstott was permitted to testify, over objection, that appellant stated he would take the breathalizer test when he was at the scene of the arrest, but refused to do so after he [appellant] arrived at the College Station Police Department.

Appellant contends that evidence of a defendant's refusal to submit to a breathalizer test is inadmissible under our holding in *Dudley v. State*, 548 S.W.2d 706 (Tex.Cr.App.1977). The State submits that after the holding of the United States Supreme Court in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), evidence of a refusal to take a breathalizer test is not prohibited by the United States Constitution.[2] The State cites *Olson v. State*, 484 S.W.2d 756, at 772 (opinion on Motion for Rehearing) (Tex.Cr.App.1972), for the proposition that Art. 1, Sec. 10 of the Texas Constitution is only as broad as the Fifth and Fourteenth Amendments of the United States Constitution. Therefore, according to the State, *Neville*, supra, is controlling.

■ In *Neville*, the Court decided that a refusal to take a blood-alcohol test after a police officer has requested it is not an act coerced by the officer, and is not protected by the Fifth Amendment privilege against self-incrimination. 459 U.S., at 564, 103 S.Ct., at 923, 74 L.Ed.2d, at 759. Therefore, Art. 1, Sec. 10 of the Texas Constitution does not prevent the State from using a defendant's refusal to take a blood-alcohol test against that defendant. *Olson*, supra. The only question is whether Art. 38.22, V.A.C.C.P., prohibits the State from using this evidence.

Appellant correctly cited *Dudley* for the proposition that under Art. 38.22, to admit evidence of a refusal to take a breathalizer

**2.** Appellant was arrested on February 1, 1983 and convicted on January 5, 1984, almost one year after his arrest. The *Neville* decision was handed down on February 22, 1983.

Legislation specifically authorizing the admission of a refusal to take a breathalizer test became effective January 1, 1984. See Art. 6701 *l*–5, Sec. 3(g), V.A.C.S. Acts 1983, 68th Leg., p. 1577, ch. 303, sec. 4, eff. January 1, 1984.

test is error. However, *Dudley* also held that the Fifth and Fourteenth Amendments to the United States Constitution barred use of this evidence. *Neville* effectively overruled the latter holding.

In the instant case, appellant was in custody at the time he refused to take the blood-alcohol test offered him by Officer Onstott. When he made this refusal, he had not been warned of his rights. Art. 38.22, Sec. 3(a)(2), V.A.C.C.P., states that an accused's statement "made as a result of custodial interrogation" is inadmissible against the accused in a criminal proceeding unless the accused receives the warning in Art. 38.22, Sec. 2(a), prior to giving his statement.

■ Officer Onstott's inquiry of whether the appellant would take a blood-alcohol test was not an interrogation. "Police words and actions normally attendant to arrest and custody do not constitute interrogation." *Neville*, supra. This Court relied on this language in *Neville* when we decided that "a defendant, faced with a decision whether to provide a blood or breath sample for chemical analysis of alcohol concentration, may not avoid making a decision by invoking the protection of the Fifth Amendment privilege against self-incrimination or the prophylactic safeguards of *Miranda*." *McCambridge v. State*, 712 S.W.2d 499 (Tex.Cr.App.1986), at 504; *Mills v. State*, 720 S.W.2d 525 (Tex.Cr.App. 1986). The appellant's refusal to submit to the breathalizer test did not result from a custodial interrogation for purposes of Art. 38.22. The testimony concerning appellant's refusal to take a breathalizer test was admissible. Appellant's second ground for review is overruled.

The judgment of the Court of Appeals is affirmed.

MILLER, J., dissents.

CLINTON, Judge, dissenting.

In my judgment the majority is sorely wrong in its treatment of the first ground for review, that error attends a defining "reasonable doubt" in a jury charge over objection by an accused. To say that this Court "will not condone" giving a jury an enlightening benefit of a fair definition on grounds that the Court has opined "reasonable doubt" does not need amplification or explanation ignores our own experiences here, and will serve to prohibit a conscientious trial judge from exercising discretion in redressing the reality of circumstances arising in a given case indicating a definition is appropriate, e.g., utter confusion engendered during voir dire examination of prospective jurors. The supreme irony comes when the majority unwittingly exposes unwritten rationale for its obdurate edict in explaining that such "error" is harmless "because it would impose a greater burden of proof upon the State to prove the guilt of the appellant." P. 721. If a criminal trial is, as heralded, "a search for truth," the majority should at least reveal how a fair explication of the constitutional standard for finding ultimate truth of guilt will put society's achieving justice in harm's way.

As to the second ground for review, while refusal to submit to taking a blood or breath sample is not a product of "custodial interrogation" for purposes of Article 38.22, V.A.C.C.P., for reasons stated in *Bass v. State*, 723 S.W.2d 687 (Tex.Cr. App.1986), in my view, refusal to comply with an official request to submit to such test is a product of compulsion and a "communication" for purposes of Article I, § 10, for reasons stated in my dissenting opinion in *Thomas v. State*, 723 S.W.2d 696 (Tex. Cr.App.1986).

For those reasons, I dissent.

TEAGUE, Judge, dissenting.

For the reasons I have stated in the dissenting opinions that I filed in *Thomas v. State*, 723 S.W.2d 696 (Tex.Cr.App. 1986), *Bass v. State*, 723 S.W.2d 687 (Tex. Cr.App.1986), and *McCambridge v. State*, 712 S.W.2d 499 (Tex.Cr.App.1986), and what I will state herein, I respectfully dissent to the majority opinion's overruling appellant's contention that the trial judge

erred in admitting into evidence his refusal to take a chemical breath test.

I pause to point out that the majority opinion in this cause is more egregious than the ones in *Thomas,* supra, and *Bass,* supra, because here the appellant was never given the *Miranda* warnings after he was arrested, nor was he given the Art. 6701*l*–5, Section 2(b), V.A.C.S., warnings, whereas in *Thomas,* supra, and *Bass,* supra, those defendants were at least given their *Miranda* warnings. However, by the majority opinion, and the ones in *Thomas,* supra, and *Bass,* supra, failure to give the accused the *Miranda* warnings or the 6701*l*–5 warnings, supra, means nothing in this State. I disagree.

In its desire to only mimic the decisions of the Supreme Court of the United States, the aggressive and assertive majority opinion in this cause makes the same identical mistake that the majority opinion did in *Thomas v. State,* supra, in which it was stated: "We find the reasoning of *South Dakota v. Neville,* supra, ... to be persuasive." Given that *South Dakota v. Neville,* supra, has been correctly declared to be "specious because it is too scant", how that case can be persuasive to anyone in deciding such a grave issue as the one before this Court to decide escapes me. See Note, "A Further Diminution of the Self-Incrimination Privilege," 6 *American Journal of Trial Advocacy* (Spring, 1986).

Today, however, perhaps now realizing that its foundation, *South Dakota v. Neville,* supra, is extremely weak, and not so persuasive, the majority opinion in this instance opts to view the matter in another light, in order to hold that although "the appellant was in custody at the time of the refusal, Officer Onstott's inquiry and the appellant's refusal did not constitute [custodial] interrogation." Also see *Bass v. State,* supra.

Talk about legal reasoning reaching the height of speciosity, I believe that the majority opinion in this cause and *Bass,* supra, actually take the cake!

It would appear that in light of its holding that "Officer Onstott's inquiry and the appellant's refusal did not constitute [custodial] interrogation", the majority opinion should just go ahead and hold that the appellant was never in the legal custody of Officer Onstott; he was just being temporarily detained and restrained of his liberty and freedom in order that his liberty and freedom could be stripped from him. Of course, given the facts and the present state of the law concerning what constitutes "custody," the author of the majority opinion, writing on behalf of an aggressive and assertive majority of this Court, has obviously realized that such a holding ·would at this time be ludicrous, and thus has put such a thought on hold—probably for another day when another aggressive and assertive majority of this Court will then hold that making ludicrous statements is in vogue. The foundation for such ludicrous propositions of law, however, has been laid, either by the opinion in this cause or the one in *Bass v. State,* supra.

Probably the most egregious part of the majority opinion, in its discussion of what constitutes "custodial interrogation," and its Freudian love for decisions by the Supreme Court, is, among other things, its failure to discuss the recent Supreme Court decision of *Berkemer v. Mc Carty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), and square up what was said in *South Dakota v. Neville,* supra, with what was stated and held in *Berkemer,* supra.

The facts in *Berkemer,* supra, and here are in all things similar, except the facts here are much stronger regarding Onstott's failure to give the appellant the *Miranda* warnings before he obtained the appellant's refusal to take the breath test. In *Berkemer,* supra, the Supreme Court rejected the State's contention that when the police *arrest* a person for allegedly committing a misdemeanor traffic offense and then ask him questions without telling him his constitutional or *Miranda* rights, his responses are admissible against him. It also rejected the State's contention that law enforcement would be more expeditious and effective in the absence of a requirement that persons arrested for mere

traffic offenses be informed of their rights by giving them the *Miranda* warnings. The Supreme Court held in *Berkemer,* supra, that "a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in Miranda, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." 104 S.Ct. at 3148.

Given what it stated and held in *South Dakota v. Neville,* supra, that fundamental fairness mandated by due process does not require a warning be given an accused that refusal to take a blood alcohol test may be used as evidence of guilt, and what it stated and held in *Berkemer,* supra, other than perhaps now being totally ashamed of what it stated and held in *Neville,* supra, the Supreme Court itself did not even mention *Neville* in *Berkemer.*

In this instance, given what he had observed, Onstott arrested the appellant for the offense of driving while intoxicated and thereafter took him to the booking desk where, in response to Onstott's question, the appellant told Onstott that he would not take the breath test. Thereafter, over objection, the trial court permitted Onstott to testify, inter alia, that the appellant "said he didn't want to take it."

The majority opinion holds that although the appellant was in Onstott's lawful custody at the time of his refusal, "Onstott's inquiry whether the appellant would take a blood-alcohol test was not an interrogation." In light of what the Supreme Court held in *Berkemer,* supra, the first holding is on firm grounds: "There can be no question that respondent was 'in custody' at least as of the moment he was formally placed under arrest and instructed to get into the police car." However, in light of what the Supreme Court stated and held in *Berkemer,* supra, the majority opinion's second holding that Onstott's inquiry of appellant did not amount to interrogation rests on quicksand. Also see the many definitions for the term "custodial interrogation" in Vol. 10A, *Words and Phrases;* in particular, see the one used by the State

of Kansas. See *Kansas v. Taylor,* 234 Kan. 401, 673 P.2d 1140, 1144 (Kan.Sup.Ct. 1983) (Held, "By custodial interrogation is meant the questioning of persons by law enforcement oficers which is initiated and conducted while such persons are held in legal custody or otherwise deprived of their freedom of action in any significant way.") Clearly, when Onstott questioned the appellant, and the appellant made known his refusal to take the test, the appellant was then in custody and was then subjected to custodial interrogation by Onstott. To say otherwise is to blink reality in the eye. But for an aggressive and assertive majority of this Court, that is not a rather simple task to do.

The Supreme Court held in *Berkemer,* supra, that "Because he [the defendant] was not informed of his constitutional rights at that juncture [when he was placed under arrest], respondent's subsequent admissions should not have been used against him." 104 S.Ct. at 3148. In so holding, the Supreme Court drew a distinction between an ordinary traffic stop, which it analogized to a so-called "Terry stop," see *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and a stationhouse interrogation, and then concluded: "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda. See *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (Per Curiam)." 104 S.Ct. at 3151. I see no difference between an incriminatory admission and a refusal to take the test. The latter is unquestionably, to the average lay person, just as incriminating as an incriminatory statement. To ignore what we now all know is gospel, as a result of the Kefauver Hearings that were conducted so many years ago and what the present Attorney General of the United States informs us today, is once again to blink reality in the eye.

The Supreme Court held in *Berkemer,* supra, that "respondent was not taken into

custody for the purposes of Miranda *until Williams [the arresting officer] arrested him.* (My emphasis.) Consequently, the statements respondent made up to that point were admissible against him." Such is certainly applicable to this cause.

Although the Supreme Court in *Berkemer,* supra, did not address the admissibility of the defendant's statements that were made after he was placed under arrest, given what it did state, it should follow that *any statements or refusals* that the appellant made after he was placed under arrest by Onstott became inadmissible evidence because of the failure of Onstott to give the appellant the *Miranda* warnings. The majority errs in holding that the appellant was not subjected to custodial interrogation by Onstott when he made known to Onstott that he "didn't want to take the breath test." Cf. *Minn. v. Heren,* 371 N.W.2d 40 (Minn.App.1985).

Another glaring omission in the majority opinion is its failure to discuss the provisions of Art. 6701*l*–5, § 2(b), V.A.C.S., and why such is not applicable to this cause in principle, notwithstanding that the amendment requiring the warnings did not become effective until after the appellant's arrest in this cause. That statute, however, is very applicable to this cause because it informs us that the Legislature of this State expressly recognized this Court's decisions of *Dudley v. State,* 548 S.W.2d 706 (Tex.Cr.App.1977), *Hitt v. State,* 548 S.W.2d 732 (Tex.Cr.App.1977), *Martinez v. State,* 548 S.W.2d 719 (Tex.Cr.App.1977); *Boney v. State,* 548 S.W.2d 730 (Tex.Cr. App.1977); *Clinard v. State,* 548 S.W.2d 716 (Tex.Cr.App.1977), in which this Court held that an accused person's refusal to take the breath test was inadmissible evidence under the Fifth Amendment and Art. 38.22, V.A.C.C.P.

Of course, the majority opinion's failure to discuss the statute, in light of what this Court held in the above cases, is understandable because the appellant never received any type legal warnings whatsoever prior to stating his refusal to consent to the test.

The statute, however, is important because the Legislature of this State has prohibited the application of *South Dakota v. Neville,* supra, to a person arrested for driving while intoxicated. The Supreme Court only held that it is *Federally* constitutionally permissible to use refusal evidence to infer guilt under South Dakota's implied consent law. Notwithstanding the lack of warnings in this cause, the implied consent statute should at least be mentioned in the majority opinion.

Texas law, however, does not permit an inference of guilt from refusal evidence, as *South Dakota v. Neville,* supra, permits. Thus, *South Dakota v. Neville,* supra, is not the here all, be all, and know all on the subject, as the majority opinion implies. Instead, the above decisions by this Court are the groundwork for the here all, be all, and know all on the subject.

Furthermore, testimony going to a defendant's refusal to take the breath test is neither relevant nor probative on the issue of his guilt, but is, instead, unfairly prejudicial. This is because "A defendant may have valid reasons for refusing a test, reasons which do not reflect consciousness of guilt; it is probable that the jury will ascribe undue weight to the refusal." *Seattle v. Boulanger,* 37 Wash.App. 357, 359, 680 P.2d 67 (1984).

Relevant evidence is ordinarily defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Rule 401, Tex. R.Cr.Evid. "All relevant evidence is admissible, except as limited by constitutional requirements, statute, by these rules or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is not admissible." Rule 402, supra.

Just recently, the Washington Supreme Court in *State v. Zwicker,* 105 Wash.2d 228, 713 P.2d 1101 (1986), was confronted in part with deciding the very same issue that is before this Court today. The State of Washington's laws on the subject are quite similar to our laws. That court held

that "The admission of refusal evidence for the sole purpose of explaining why no Breathalyzer test was given is not probative of the existence of any fact that is of consequence to the determination of guilt. Such evidence neither proves nor disproves the accusation that the defendant was affected by alcohol. Where a defendant has refused a Breathalyzer [test]...the State is foreclosed from establishing culpability by blood alcohol content. Rather, the State must prove that the defendant was under the influence of intoxicants and must rely largely upon evidence of the driver's behavior, results of field sobriety tests, the driver's admissions and the officer's expert opinion as to the defendant's sobriety."

Of course, should the defendant open the controversy by a showing of lack of credibility or competence of the arresting officer, by showing a failure to adhere to normal police procedures, or it is necessary to rebut the defendant's evidence, then such refusal evidence might become admissible.

However, as the matter now stands, the jury in this cause was treated to evidence for which there was no instruction; evidence on which the jury might have speculated or drew erroneous inferences therefrom, including, but not limited to, an inference of guilt. In the land of the free and the home of the brave, this should not be.

In any event, such evidence is not per se probative of the existence of any fact that is of consequence to the determination of the accused's guilt. Therefore, refusal evidence is not properly a part of the State's case in chief. It becomes admissible only where it can qualify or disprove contentions raised by the accused, and that did not occur in this cause.

For the reasons that I have stated in my dissenting opinions in *Thomas v. State,* supra, and *Bass v. State,* supra, it should be obvious to anyone that a refusal constitutes testimonial compulsion, which should be protected by Art. 1, Section 10, of the Texas Constitution. Thus, we should part company with the Supreme Court's decision of *South Dakota v. Neville,* supra, and not hold that such is physical evidence, as the Supreme Court did, but, instead, adhere to what the Supreme Court of South Dakota stated and held on remand, see *State v. Neville,* 346 N.W.2d 425 (S.D.Sup.Ct.1984), and hold as a matter of State law that "The very consequence of which the arresting officer failed to warn [appellant] is that consequence which the State now seeks to impose. Since [appellant] was not fully informed of this consequence, he did not voluntarily, knowingly and intelligently waive his constitutional protection of due process and prohibition against self-incrimination ..." 346 N.W.2d at 430–31. It is clearly coercive to grant a suspect a right to refuse while failing also to inform him that his refusal can be used, for all practical purposes, as evidence of his intoxication. It is legally incongruous to hold that without being told what the consequences of his refusal might be, an accused, such as the appellant, is to be penalized for refusing to take the test. It is legally fallacious to hold that once he has exercised his legal right to refuse a breath or blood test that he then must suffer whatever importance a usual composition of lay persons might attach to such refusal.

In light of all of the above, the majority clearly errs in upholding the trial judge's decision to admit into evidence the fact that the appellant refused to take the test.

Given what the majority opinion states in affirming the trial judge's decision to give, at least in Texas, a legally erroneous definition for the legal term "reasonable doubt," I am also compelled to dissent to that part of the opinion which holds that such error was harmless. Given the fact that I am confident that counsel for the appellant will most certainly file a motion for rehearing in this cause, I will defer addressing that part of the opinion until that time.