[Nos. 51708–8, 51713–4.   En Banc.   February 6, 1986.]

THE STATE OF WASHINGTON, *Petitioner*, v. BENNY
ZWICKER, *Respondent*.

THE STATE OF WASHINGTON, *Petitioner*, v. DONALD
D. PALANUIK, *Respondent*.

David S. McEachran, Prosecuting Attorney for Whatcom County, and Robert Carmichael, Deputy; Donald C. Brockett, Prosecuting Attorney for Spokane County, and James R. Sweetser, Deputy, for petitioner.

Jon E. Ostlund and Robert S. Jones of Whatcom County Public Defender Association and Richard L. Cease and Carl E. Hueber of Spokane County Public Defender Association, for respondents.

James H. Kaufman, Prosecuting Attorney for Whitman County, and Susan J. Grosshandler, Deputy, amici curiae for petitioner.

DORE, J.—In this consolidated case the State seeks direct review of the rulings of two superior courts, which held that evidence of refusal to take a Breathalyzer test is inadmissible as irrelevant, prejudicial or both in an action for driving while under the influence. We affirm.

## FACTS

Palanuik—On August 27, 1984, a Washington State Patrol trooper was advised by radio dispatch of a 2–car noninjury accident in Spokane County. The trooper responded to the call and upon arrival was advised by a Spokane County deputy sheriff that the defendant had an odor of alcohol on his breath and that there could be a possible charge of driving while under the influence. The

trooper investigated the accident and, upon contacting the defendant, noticed a strong odor of alcohol on defendant's breath and that his eyes were watery and bloodshot. He asked the defendant to step from his vehicle and observed that the defendant was off balance. He asked the defendant whether he had been drinking or had any physical defects. The trooper then requested the defendant to perform field sobriety tests. On the finger–to–nose test, the defendant swayed severely back and forth, and side to side. When given the balance test, the defendant was unable to stand on either foot and almost fell down. When asked to walk a straight line, the defendant was slow and unsure and almost fell back when he turned around. In the trooper's opinion, the defendant's driving ability was obviously impaired.

The defendant was then placed under arrest for driving while under the influence, was read his constitutional rights and transported to jail. At the jail, defendant was asked to take a Breathalyzer test; he refused.

In District Court the trooper testified, over objection, that the defendant refused to take a Breathalyzer. In closing arguments the deputy prosecuting attorney made no reference to this refusal. A jury instruction proposed by the State was given as follows:

> There shall be no speculation as to the reasons for the defendant's refusal to take a breathalyzer test. You are not to draw any inferences or conclusions from his refusal.

*See* RCW 46.61.517 (enacted July 1, 1983).

The jury returned a guilty verdict, and the defendant was sentenced to 3 days in jail and 100 hours of community service.

The defendant appealed to Spokane County Superior Court. The Superior Court found that RCW 46.61.517 served no useful purpose as written because it was in conflict with Rule of Evidence 403. The court reversed and remanded for a new trial.

Zwicker—On August 4, 1984, an officer of the Bellingham

Police Department observed that a pickup truck, traveling in front of him, was weaving back and forth within its own lane of travel. When the truck made a right turn to head eastbound, the vehicle traveled across both eastbound lanes, crossed the center line, and went almost completely into the westbound lane designated for oncoming traffic. Even after the pickup was steered back to the proper eastbound lanes, it continued to weave from one lane to the next for approximately 2 blocks.

The officer then activated overhead emergency lights and eventually turned on his spotlight, shining it into the side view mirror of the pickup. There was no response from the driver of the pickup. A few blocks later, the pickup pulled to the side of the road. As the officer exited his patrol vehicle and approached the pickup, the pickup backed up and struck the patrol vehicle. All during this time, the overhead emergency lights of the patrol car were on and in plain sight.

The driver of the pickup was Benny Zwicker. The officer noticed that: (1) the defendant had a strong odor of intoxicants about him, (2) his eyes were watery and bloodshot, (3) he had a blank expression, and (4) he was unsteady on his feet and swayed back and forth. The officer placed the defendant under arrest for driving while under the influence of intoxicants and also for driving with a suspended license. At the police station, the defendant was given the opportunity to take a Breathalyzer test; he refused.

Prior to trial on the driving while intoxicated charge, defense counsel requested the court to exclude all evidence relating to the refusal of the Breathalyzer test. The court denied the motion, and evidence that the defendant refused the Breathalyzer was admitted at trial, with a jury instruction which stated:

> You shall not speculate as to the reason that the defendant refused to take a breathalyzer test and no inference is to be drawn from the refusal.

Instruction 9. *See* RCW 46.61.517. The jury found the defendant guilty of driving while under the influence.

Zwicker appealed, contending that the trial judge erred by admitting the defendant's refusal to take a Breathalyzer test as evidence. The Superior Court reversed the trial court, ruling that the defendant's refusal to take a Breathalyzer test was not relevant evidence and, even if relevant, it was prejudicial and therefore not admissible. The court further held that admitting the defendant's refusal into evidence was not harmless error, and remanded the case for a new trial.

## RELEVANCY OF REFUSAL EVIDENCE

This case presents a question of first impression concerning the validity of Washington's implied consent law, RCW 46.20.308, and its counterpart, RCW 46.61.517 (enacted July 1, 1983), which purport to authorize the admission into evidence of a defendant's refusal to submit to a blood alcohol content test. RCW 46.20.308(1) provided that an arresting officer "shall warn the driver that his refusal to take the test may be used against him in any subsequent criminal trial." The evidentiary counterpart, RCW 46.61-.517 read as follows:

The refusal of a person to submit to a test of the alcoholic content of his blood under RCW 46.20.308 is admissible into evidence at a subsequent criminal trial without any comment and with a jury instruction, where applicable, that there shall be no speculation as to the reason for the refusal and that no inference is to be drawn from the refusal.[1]

This provision prohibits the State from arguing that guilt

---

[1]On May 20, 1985, after these cases were heard by the lower courts, the Legislature amended RCW 46.61.517 by deleting any reference to a jury instruction. *See* Laws of 1985, ch. 352, § 21. Now the refusal of a person to submit to a test of alcohol content of his blood under RCW 46.20.308 is admissible into evidence at a subsequent criminal trial "without comment" but also without the language contained in the instruction. The 1985 amendments to RCW 46.61.517 make the implied consent law even more unclear. The statute now provides that a "refusal . . . is admissible into evidence at a subsequent criminal trial without any comment." Whether the "without any comment" applies to the trial judge, prosecutor or defense counsel is unclear. It is also unclear what inferences the jury can draw from the refusal evidence when there is to be no comment.

can be inferred from the defendant's refusal or that the defendant's refusal can give rise to an inference that he had conscious doubts as to whether or not the test would vindicate his sobriety. "[T]here shall be no speculation as to the reason for the refusal and . . . no inference is to be drawn from the refusal [to take the test]."

This statutory scheme appears to be peculiar to Washington. In nearly all other jurisdictions, refusal evidence is either inadmissible or is admissible as probative of the defendant's guilt or innocence. *See* Annot., *Admissibility in Criminal Case of Evidence That Accused Refused To Take Test of Intoxication,* 26 A.L.R.4th 1112 (1983). The United States Supreme Court has held that it is constitutionally permissible to use refusal evidence to infer guilt under state implied consent laws. *South Dakota v. Neville,* 459 U.S. 553, 74 L. Ed. 2d 748, 103 S. Ct. 916 (1983). Nonetheless, by RCW 46.61.517, the Washington Legislature has prohibited this application of refusal evidence.

Washington's "no speculation, no inference" provision was part of amendments to the implied consent law made as an apparent reaction to *State v. Parker,* 16 Wn. App. 632, 558 P.2d 1361 (1976), *review denied,* 88 Wn.2d 1012 (1977). In *Parker,* the Court of Appeals interpreted the evidentiary provisions of a prior implied consent law which made no mention of whether the refusal to take a chemical test was admissible in a subsequent criminal trial. The court held that

> had the statute intended evidentiary use of the right of refusal, it is logical that the arresting officer would be required to inform him that his refusal could be used as evidence in a criminal proceeding as well as the consequential loss of the privilege to drive. Since the statute does not require such warning, we conclude that the legislation did not contemplate the additional consequence.

*Parker,* at 635. The court continued at page 636:

> We have grave doubts of the probative value of refusal evidence where defendant is exercising a right granted by statute. Inasmuch as there is such a statutory right of refusal, we hold that the State may not use such evidence

in a criminal proceeding as establishing an inference of guilt.

Subsequent to the *Parker* decision, the Legislature enacted the 1983 amendments to provide for evidentiary use of the right of refusal. The amendments did not, however, follow the rule announced in *Neville* permitting an inference of guilt from refusal evidence. Rather, the Legislature provided that a refusal is admissible "without any comment" and with the "no inference" jury instruction.

The next case to address the admissibility issue was *Seattle v. Boulanger*, 37 Wn. App. 357, 680 P.2d 67 (1984). *Boulanger*, like *Parker*, dealt with the statutory scheme which did not address the evidentiary consequences of refusal. The trial court ruled that the defendant's refusal was inadmissible, but allowed testimony that the defendant had been afforded an opportunity to submit to a Breathalyzer test. The Court of Appeals reversed, finding the evidence not relevant and unfairly prejudicial:

> The evidence is not relevant. The City has no affirmative duty to establish that the defendant was afforded an opportunity to prove his sobriety. Moreover, any arguable probative value is substantially outweighed by the danger of unfair prejudice to the defendant. ER 403. A defendant may have valid reasons for refusing a test, reasons which do not reflect consciousness of guilt; it is probable that the jury will ascribe undue weight to the refusal.

(Citation omitted.) *Boulanger*, at 359. The *Boulanger* court further indicated that the record was inadequate to make a determination as to whether the error was harmless and whether a limiting instruction could have cured the error. *Boulanger*, at 360.

The respondents argue that the analysis of *Boulanger* continues to apply to the amended statute. The respondents contend that, because the statute prohibits use of refusal evidence to infer guilt, such evidence is irrelevant to the State's case and thus inadmissible under Rules of Evidence 401, 402 and 403. ER 401 defines relevant evidence as "evidence having any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is admissible, except as limited by constitutional requirements, statute, or court rule. Evidence which is not relevant is not admissible. ER 402.

The admission of refusal evidence for the sole purpose of explaining why no Breathalyzer test was given is not probative of the existence of any fact that is of consequence to the determination of guilt. Such evidence neither proves nor disproves the accusation that the defendant was affected by alcohol. Where a defendant has refused a Breathalyzer, or one has not been offered, the State is foreclosed from establishing culpability by blood alcohol content. Rather, the State must prove that defendant was under the influence of intoxicants and must rely largely upon evidence of the driver's behavior, results of field sobriety tests, the driver's admissions and the officer's expert opinion as to the defendant's sobriety.

The State contends that the probative value of refusal evidence, under Washington's implied consent law, lies in the fact that it allows the jury to consider the refusal as background information to show that all normal police procedures were followed. The State argues that, because the Breathalyzer is such an accepted component of a driving while under the influence trial, evidence of a refusal of that test is relevant to negate any contemplation on the part of the jury that the defendant was not afforded an opportunity to take the test and, thus, is unable to establish his innocence. Further, the State contends that a total absence of evidence on the Breathalyzer will lead the jury to speculate on police or prosecutorial impropriety.

This contention was addressed in a different context in *Kirkland v. O'Connor*, 40 Wn. App. 521, 698 P.2d 1128 (1985). In *O'Connor* the defendant was not offered a Breathalyzer test. At trial the district court judge sua sponte instructed the jury that it was not to draw any conclusions or inferences whatsoever from the absence of a

Breathalyzer test result, nor was it to speculate on the reasons for the absence of a test result. In response to objections, the court stated the instruction was based on its experience that juries had in some cases speculated why there was no evidence of a Breathalyzer test result. The Court of Appeals reversed the defendant's conviction, ruling that an apprehension of widespread public knowledge about Breathalyzers did not justify an instruction which prohibited inferences or speculation on the absence of Breathalyzer evidence.

It would seem to follow that public awareness alone does not make evidence of failure to offer the test, or refusal to take the test relevant to the State's case in chief. Since the refusal evidence is only germane to the tangential point of "public awareness", it should not be admitted in the first instance.

The State's argument concerning "normal procedures and public awareness" also fails because the same provision which prohibits an inference of guilt also arguably prohibits the prosecutor from commenting on the refusal in order to make such an argument, and specifically prohibits the jury from drawing the inference that normal procedures were followed from the fact of refusal.

If the jury must be told that, in effect, it can attach no probative value to the evidence of refusal and no argument can be made concerning the evidence, then clearly nothing exists to outweigh the obvious prejudice of the admission of such a refusal. ER 403 requires a balancing of any unfair prejudice of the "refusal evidence" against its probative value. After establishing the admissibility of such evidence, RCW 46.61.517 proceeds within the same sentence to destroy any probative value of such evidence by withdrawing the same from the jury's consideration and prohibiting any inference to be drawn therefrom.

Apparently, only Michigan has a statutory implied consent scheme even remotely similar to Washington's in evidentiary use of refusals to submit to a Breathalyzer. In *People v. Duke,* 136 Mich. App. 798, 357 N.W.2d 775

(1984), the court had occasion to interpret the 1980 amendments to the Michigan implied consent laws. The amended statute as it relates to admissibility of refusals provides:

"(8) If a jury instruction regarding a defendant's refusal to submit to a chemical test under this section is requested by the prosecution or the defendant, the jury instruction shall be given as follows:

"'Evidence was admitted in this case which, if believed by the jury, could prove that the defendant had exercised his or her right to refuse a chemical test. You are instructed that such a refusal is within the statutory rights of the defendant and is not evidence of his guilt. You are not to consider such a refusal in determining the guilt or innocence of the defendant.'"

*Duke,* at 801–02. The court interpreted this provision to imply admissibility of evidence of refusal and yet remove the refusal from consideration as to guilt or innocence. *Duke,* at 802. The court acknowledged that *Neville* holds that refusal evidence can be admitted as probative of guilt, but also noted that Michigan does not permit its admission for the purpose of guilt or innocence. The court went on to hold:

Logically then, evidence of the refusal may not be admitted to prove the elements of the crime.

The most obvious examples of circumstances where such evidence could be admitted are:

a. Where the defendant denies being given an opportunity to take a Breathalyzer test,

b. Where the defendant claims that he took the test and the results were exculpatory,

c. Where the defendant challenges the competency of any of the testing done by the officer, or

d. Where the defendant challenges the credibility of the officer.

*Evidence of refusal* to take the test is proper in situations such as the above where the *defendant opens the controversy by a showing of lack of credibility or competence of the police officer and it is necessary to rebut defendant's evidence.*

We then decide that, until such time as the Legislature or Supreme Court clarifies the purpose of MCL 257-

.625a(8); MSA 9.2325(1)(8), *evidence of refusal* to take the tests provided by statute *should not be admitted in the case in chief as it is not evidence of guilt or innocence or an essential element of the prosecutor's case.*

If evidence of refusal comes into the case by inadvertence or is required to rebut the evidence of the defendant and is admitted, then the instruction set forth in the act is mandated if requested by either party.

Under the rule just set forth the disparity between implied admission of evidence of refusal and the instruction which limits admissibility only to relevant matters not bearing on guilt or innocence is harmonized. We believe that to be the intent of the Legislature.

(Italics ours.) *Duke,* at 803–04.

The interpretation given the Michigan statute by the court in *Duke* may also be applied to the Washington provision. The statute prohibits the jury from drawing inferences from refusals. The State concedes that this prohibition prevents the use of refusal evidence as an inference of guilt or innocence. Not being probative of the existence of any fact that is of consequence to the determination of guilt, refusal evidence is not properly a part of the State's case in chief. Admissibility of a refusal to submit to a Breathalyzer is proper in situations where the defendant opens the controversy by contending there was a lack of credibility or competence on the part of the police (failure to adhere to normal procedures). The refusal is relevant under circumstances where it can qualify or disprove contentions raised by the defendant. *See State v. Demos,* 94 Wn.2d 733, 619 P.2d 968 (1980).

This interpretation of RCW 46.61.517 requires that the language of the provision "is admissible" be read as permissive language and as not mandating admissibility in all cases. This interpretation also avoids any conflict with ER 401 and 403 which would require invalidation of the statute. *See State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984).

### SELF–INCRIMINATION

As an additional basis for upholding the suppression of

the refusals, the respondents contend that they did not voluntarily, knowingly and intelligently waive their constitutional protections of due process and the prohibition against self-incrimination. The basis of this contention is that a refusal constitutes testimonial communication, protected by article 1, section 9 of the Washington State Constitution. The respondents argue that the language difference in article 1, section 9, "to give *evidence* against himself", when compared with that of the Fifth Amendment, "to be a *witness* against himself," warrants that a refusal be afforded the protections of article 1, section 9. (Italics ours.)

In *South Dakota v. Neville*, 459 U.S. 553, 74 L. Ed. 2d 748, 103 S. Ct. 916 (1983) the Supreme Court addressed the question as to whether refusal evidence was afforded the Fifth Amendment protections against self-incrimination. As a basis for its analysis, the Court started with *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966), where the Court ruled that taking a blood test to determine alcohol content could be compelled since it was physical rather than testimonial evidence.[2] The Court recognized that a state can "force" a suspect to take a chemical test. South Dakota, however, in order to avoid violent confrontations, allows the suspect to refuse the test. The State penalizes such a refusal by revoking the driver's license and by allowing the refusal to be used as evidence at the defendant's trial. *Neville*, at 559.

Thus, the issue in *Neville* became whether the refusal was physical or testimonial evidence. The Court noted that most courts which had considered the issue had found no violation of the privilege against self-incrimination, since the refusal to submit to a test was a physical act, rather than a testimonial communication. *Neville*, at 560. Since a

---

[2]In *Schmerber* the Court held that withdrawal of blood to determine blood alcohol content and its admission in evidence did not abridge federal constitutional guaranties of due process, the privilege against self-incrimination, the right to counsel, or the right to be free from unreasonable searches and seizures.

refusal could be either verbal or nonverbal, however, the Supreme Court chose to base its decision on whether there was impermissible compulsion in putting defendants to a choice of taking the test or refusing it. *Neville,* at 562. Accordingly, the Court reasoned as follows:

> Given, then, that the offer of taking a blood–alcohol test is clearly legitimate, the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice. Nor is this a case where the State has subtly coerced respondent into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants respondent to choose to take the test, for the inference of intoxication arising from a positive blood–alcohol test is far stronger than that arising from a refusal to take the test.

*Neville,* at 563–64. Therefore, the Court held that a right to refuse to take a chemical test determining a blood alcohol level is a statutory right, without constitutional implications. The refusal is not an act impermissibly coerced by the choice put to the defendant. *Neville,* at 564.

The second issue *Neville* addressed was whether the defendant's refusal could be introduced into evidence despite the fact that he was given no warning of this consequence. Since the defendant's right to refuse is a legislative "matter of grace," the Court found that evidentiary use of the refusal was not fundamentally unfair. *Neville,* at 565. The Court concluded that the warning that failure to take the test could lead to loss of driving privileges, without a warning on admissibility of the decision to refuse "was not the sort of implicit promise to forgo use of evidence that would unfairly 'trick' respondent if the evidence were later offered against him at trial." *Neville,* at 566.

On remand of *Neville,* the Supreme Court of South Dakota affirmed its prior holding that refusal evidence is testimonial and, thus, within the state constitutional protections against self–incrimination. *State v. Neville,* 346 N.W.2d 425 (S.D. 1984). The court then addressed whether the refusal was compelled testimony for the purpose of

applying the privilege against self–incrimination. The court held that the additional penalty of disclosure of a refusal in the prosecution (the other penalty being license revocation) does not compel a defendant to produce self–incriminating evidence to escape unwarranted consequences. *Neville,* 346 N.W.2d at 429–30. The court went on, however, to hold that due process concerns require that the defendant be fully informed of the consequences of his choice; otherwise he has not voluntarily, knowingly and intelligently waived his constitutional protections.

Inherent, however, in this constitutional protection against self–incrimination and also the protection of due process is the requirement that an arresting officer must fully inform a defendant driver of the consequences of a refusal to submit to a blood–alcohol test. Below, the arresting officer informed Neville of the *Miranda* warnings but then only partially informed him of the consequences attendant to the refusal of the request for submission to a blood–alcohol test. The arresting officer did not warn Neville that the test results could be used against him at trial. In its brief, State admits that "the Defendant should have been warned that his refusal could be used as evidence in a subsequent DWI trial . . ." but argues that this failure did not violate Neville's due process rights. We disagree. The very consequence of which the arresting officer failed to warn Neville is that consequence which the State now seeks to impose. Since Neville was not fully informed of this consequence, he did not voluntarily, knowingly and intelligently waive his constitutional protection of due process and prohibition against self–incrimination. Accordingly, we affirm the trial court's holding that Neville's refusal to submit to the blood–alcohol test is inadmissible.

(Footnotes and citations omitted.) *Neville,* 346 N.W.2d at 430–31. Thus, the Supreme Court of South Dakota held that the accused must be fully informed of the consequences of his refusal in order that he voluntarily, knowingly and intelligently waive his constitutional protections of due process and prohibition against self–incrimination.

■ We need not decide whether refusal evidence is subject to the protections of Const. art. 1, § 9. This provision,

like its federal counterpart, prohibits a person from being *compelled* to give evidence or to be a witness against himself. While respondents may have been given a difficult choice—either refuse the test and suffer the attendant penalties, or submit and face the results as evidence of intoxication—the choice is simply a matter of legislative grace. This court in *State v. Moore,* 79 Wn.2d 51, 483 P.2d 630 (1971) ruled that the interpretation given the Fifth Amendment in *Schmerber* is applicable to article 1, section 9 of the Washington Constitution. The court held that the Washington implied consent law, which requires motorists suspected of driving while intoxicated to submit to a Breathalyzer test under penalty of revocation of license for refusal, does not compel an accused to give evidence against himself within the meaning of article 1, section 9. The analysis in *Moore* was reaffirmed in *State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982), where this court examined the amended driving while under the influence statute. The court held that a Breathalyzer sample is not rendered testimonial in nature by the provision which makes driving with a .10 percent or higher blood alcohol level one of the alternate means of committing the offense. Attaching penalties to the exercise of the statutory right of refusal is not inherently coercive where the Legislature could withdraw this privilege altogether.

Moreover, and perhaps more importantly, respondents have not argued, nor does the record reveal, that they were misinformed as to the consequences of their choices. The infirmity addressed by the Supreme Court of South Dakota in *Neville* was the granting of a right to refuse the test without a corresponding warning of the consequences of exercising that right. The court essentially held that under South Dakota's constitution, it is coercive to grant a suspect a right to refuse while failing also to inform him that his refusal can be used as evidence of his intoxication.

In contrast to the statutory scheme in *Neville,* the Washington implied consent statute requires that the accused be warned that a refusal to submit to the blood

alcohol content test *may* be used against him in a subsequent criminal proceeding. RCW 46.20.308(1) (now codified under subsection 2). As can be seen from the remainder of our opinion, the word *may* properly expresses a possible consequence of refusal. Because admissibility of a refusal is proper in certain situations where the defendant essentially opens the controversy, the warning fully informs the accused of the consequences of a refusal. Thus, there is no coercion in obtaining refusal evidence where the accused is fully informed of the consequences of exercising the statutory right of refusal.

## PREJUDICIAL ERROR

The State's final argument is that respondents were not prejudiced by any error which may have occurred in admission of the refusal evidence. The State contends that applying the standard for prejudicial error, after reviewing the jury instructions and the abundant evidence of intoxication presented in both trials, it cannot be found within reasonable probabilities that the outcome of the trial was materially affected.

Respondents counter that the admission of refusal evidence was error of constitutional magnitude and either the "contribution test" or "overwhelming evidence test" governs. Respondents argue that either test would require reversal of their convictions.

Any error in admission of the refusal is not of constitutional magnitude. *See Neville; State v. Franco, supra.* The State has also set forth the correct standard of review. *See State v. Cunningham,* 93 Wn.2d 823, 613 P.2d 1139 (1980).

The superior courts found that it was not possible to determine whether the admission of the refusals did not affect the jury verdicts. Thus it is within a reasonable probability that the outcome of the trials was materially affected by introduction of the evidence of refusal to submit to the Breathalyzer test. The appropriate remedy is reversal of the verdicts and the granting of new trials.

### CONCLUSION

We hold that refusals to take Breathalyzer tests are only admissible when the defendant initially raises the issue of a blood alcohol content test by contesting the credibility or competence of police procedures. This approach harmonizes the language of the warning and evidentiary statute and avoids any constitutional or statutory basis for finding the evidence impermissibly compelled. The subject superior courts correctly found that the refusals to take Breathalyzer tests were irrelevant and prejudicial, and that it was prejudicial error to admit such refusals into evidence at trial.

We affirm.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.