IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32734-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VICKI S. BARRETT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Vicki Barrett appeals her conviction for first degree theft, contending both that the evidence was insufficient and that improper admission of hearsay evidence deprived her of a fair trial. Concluding that the evidence was sufficient and that any error did not taint the verdict, we affirm.

## FACTS

Ms. Barrett was charged with two counts of first degree theft involving her elderly father, Clarence Swanson. He was in his late 80s at the time of the relevant events in 2010 and 2011 and residing at the Spokane Veterans Home, a nursing care facility. He was frail and blind and unable to manage his own personal or financial affairs. He had a history of cancer and was suffering from dementia.

At some point in late 2010, Ms. Barrett received a check for $16,980 made out to Mr. Swanson.[1] Acting under her power of attorney for Mr. Swanson, she used approximately half of the check to pay off the mortgage on the home owned by Mr. Swanson and taxes owed on the property. She spent some of the remainder of the check purchasing a variety of furniture, clothing, supplies, and food. Ostensibly, Ms. Barrett was preparing the house so that Mr. Swanson could leave the Veterans Home and return to her care, even though he had not lived in the house since 2006.

As a result of the check, Mr. Swanson ceased qualifying for Medicaid assistance in paying for his stay at the nursing home. Consequently, he was expected to pay the full amount of his care until the $16,980 was accounted for and he again qualified for Medicaid. While Ms. Barrett continued to pay the copay required under Medicaid, she never paid the full amount, and his arrearages mounted to just over $64,000 before he died.

Later that year, Ms. Barrett made arrangements with attorney Robert Redmond to have a quitclaim deed drafted transferring ownership of Mr. Swanson's home to herself. That deed was then executed, with Ms. Barrett signing for her father under the power of attorney. Mr. Redmond was of the opinion that Mr. Swanson understood what he was doing and manifested an intent to carry out the transfer, but was physically unable to sign the paperwork.

---

[1] It is not clear whether the check was a refund on an insurance policy or a back-payment of a veteran's pension. *See* Report of Proceedings (RP) at 62, 141.

2

Adult Protective Services (APS) investigated the situation and obtained findings of neglect and financial exploitation in administrative proceedings before referring the matter to the police.[2] The two noted charges eventually were filed against Ms. Barrett, with one count of first degree theft relating to the check and the other to the home. The jury convicted Ms. Barrett on the count relating to the check, but acquitted her on the count relating to the home. The jury also found two aggravating factors present—the victim was particularly vulnerable and Ms. Barrett abused a position of trust.

After the trial court imposed a standard range term of zero days in jail, Ms. Barrett timely appealed to this court.

## ANALYSIS

Ms. Barrett contends both that the trial court wrongly permitted hearsay testimony into evidence and that her confrontation clause rights were violated by that process, as well as contending that the evidence was insufficient to support the conviction. We address the evidentiary sufficiency claim first before turning to the hearsay/confrontation clause contentions.[3]

---

[2] All evidence relating to the administrative proceedings was stricken during motions in limine.

[3] Ms. Barrett also contends that her trial counsel was ineffective by failing to raise her confrontation claim. In light of our determination that any error was harmless, we do not independently address that argument.

*Sufficiency of the Evidence*

Very well settled standards govern review of this first issue. Appellate courts review evidentiary sufficiency challenges to see if there was evidence from which the trier of fact could find each element of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-875, 83 P.3d 970 (2004). "Credibility determinations are for the trier of fact and are not subject to review." *Id.* at 874.

As charged, the State was required to prove that Ms. Barrett exercised unauthorized control over the property of Clarence Swanson in a value exceeding $5,000. Clerk's Papers (CP) at 1-2; RCW 9A.56.030(1). In particular, count II alleged that Ms. Barrett had exercised unlawful control over a $16,000 check. CP at 1-2.

Here, Ms. Barrett contends the evidence was insufficient to establish that she stole the check, pointing to her use of the proceeds to pay off the mortgage and improve the home, and the jury's acquittal on the house theft count. However, the existence of contradictory evidence does not create an evidentiary sufficiency issue. The focus of this challenge is on what the jury decided, not what it could have decided.

Here, the jury could determine that Ms. Barrett profited from the use of the proceeds of the check. First, she did not account for all of the $16,000 proceeds from the check. Even if the jury decided that the $8,000 spent to pay off the mortgage and taxes was for her father's benefit rather than her own benefit, a determination that only the jury could make, the remaining $8,000 was not accounted for. Some of that amount allegedly was spent at Costco for items used in the home, but given that Mr. Swanson had not lived in the house for five or six years, the jury understandably had reason to conclude that those expenditures were not for his benefit.

The jury's decision to acquit on the count involving the theft of the house is not the least bit inconsistent with the conviction for theft of the check. The testimony of attorney Redmond gave the jury a basis for concluding that Mr. Swanson did want to deed the house to his daughter, Ms. Barrett. Redmond testified that he took precautions to affirm that it was Mr. Swanson's desire to deed the house over rather than merely the desire of Ms. Barrett. Report of Proceedings (RP) at 32-40. In contrast, other than Ms. Barrett's own testimony, there was no similar evidence indicating that Mr. Swanson wanted Ms. Barrett to spend the check proceeds. The jury easily had a basis to distinguish between the two situations.

The evidence permitted the jury to conclude that the proceeds of the check were spent to benefit Ms. Barrett rather than her father. The effect of her use of the check proceeds was to burden her father's estate with a $64,000 nursing home bill. Since the

5

only person to benefit from this arrangement was Ms. Barrett, the jury's verdict was quite understandable.

The evidence supported the jury's determination.

*Hearsay and Confrontation Challenges*

Ms. Barrett spends a substantial amount of time arguing over the effect of one question asked during the brief testimony of a detective at the end of the State's case, contending that the question constituted hearsay and a violation of her right to confront witnesses. The latter contention is utterly without merit. However, review of the testimony is necessary to explain her arguments.

At the very end of the State's case, the prosecutor called detective Kirk Kimberly to very briefly[4] testify concerning his referral of the case to the prosecutor's office. At the time, Detective Kimberly was the vulnerable adult investigator for the Spokane Police Department. He explained that the case qualified for expedited treatment that consisted of review of the APS file and referral to the prosecutor because probable cause existed to believe that theft had occurred. It appears that the primary purpose of calling the detective was to preemptively explain why he did not independently interview witnesses or further develop the case. Defense counsel focused her examination on the actions

---

[4] Direct examination of the detective took less than four pages of the transcript, including the defense objection, and cross-examination took another two pages. RP at 105-110.

Detective Kimberly did not take—he did not interview Mr. Swanson, he did not interview Mr. Swanson's doctor, he did not interview Ms. Barrett, and he did not interview Mr. Swanson's other daughter, Flori Benner. At the end of the cross-examination, the defense immediately called Ms. Benner as the first witness.

The prosecutor asked about the detective's review of the report by APS investigator Martin Yacker. Mr. Yacker had testified for the State immediately before Detective Kimberly. The prosecutor asked the following question:

> Reviewing the report, is it your understanding there was a check from the VA paid to Mr. Swanson but spent by Ms. Barrett?

RP at 107. Defense counsel immediately objected, "hearsay." RP at 108. The trial judge directed the witness to answer the question "yes or no," but not repeat anything stated in the report. RP at 108. The detective answered "yes." RP at 108. The prosecutor then more neutrally phrased a question whether the detective had also investigated and referred the house transaction to the prosecutor's office. The defense did not object to that question.

It is from this small mound of dirt that Ms. Barrett attempts to build a constitutional mountain. The constitutional question is easily rejected. The author of the report in question, Mr. Yacker, testified at trial (as did the treating physician, Dr. Penger). When a witness testifies at trial, the opportunity for confrontation exists. Therefore, no confrontation clause violation exists when one witness is asked about a statement

7

allegedly made by another testifying witness. *Thomas*, 150 Wn.2d at 858-859. If Detective Kimberly was reporting a statement[5] allegedly made by Mr. Yacker, there was no confrontation issue because Mr. Yacker testified at trial.[6]

It is a closer question whether there was a violation of the rule against hearsay. ER 802. Hearsay is a statement made by a declarant, other than while testifying, that is "offered in evidence to prove the truth of the matter asserted." ER 801(c). Ms. Barrett argues that the form of the question elicited a statement from Mr. Yacker's report. Given the trial court's intervention and direction to only respond "yes or no" rather than relate a statement, there probably was no violation of the hearsay rule. *Thomas*, 150 Wn.2d at 863 (where statement not elicited, no violation of hearsay rule). Nonetheless, the imprecise wording of the question unnecessarily injected a potential hearsay answer into the case and should have been avoided.

---

[5] The substance of the statement at issue was Ms. Barrett's statements to Mr. Yacker concerning her use of the proceeds of the check. When offered against Ms. Barrett, her statement to Mr. Yacker would not itself be hearsay. ER 801(d)(2)(i). A recitation of Yacker's report of that statement by a third party such as Detective Kimberly presents a different issue.

[6] Ms. Barrett also points to the fact that the detective reviewed the medical records contained in the APS investigation. As the author of those records, Dr. Penger, also testified at trial, there likewise was no confrontation issue presented concerning those records.

Regardless of this possible error, there was absolutely no harm to Ms. Barrett. Nonconstitutional error is harmless if, within reasonable probability, it did not affect the verdict. *State v. Zwicker*, 105 Wn.2d 228, 243, 713 P.2d 1101 (1986). Even constitutional error is harmless error if it is clear beyond a reasonable doubt that the error did not contribute to the verdict. *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)); *Thomas*, 150 Wn.2d at 840-841. Under either standard, the alleged error was harmless in this instance. Mr. Yacker testified to the same facts on direct examination and Ms. Barrett did so as well. There was no question but that she cashed the check and spent some of the proceeds. The question presented for the jury's decision was whether she was permitted to do so. This third recitation of the same fact, to the extent that the answer "yes" to the prosecutor's question can be construed in such a manner, was utterly harmless in this case.[7]

To the extent that there was any error here, it did not impact the jury's decision. Ms. Barrett has not established any prejudicial error.

Affirmed.

---

[7] The answer the prosecutor was trying to elicit does appear to have been offered for the purpose of establishing what the detective did. A statement that the answer was for the limited purpose of explaining the detective's actions would have limited the jury's use of the testimony to a proper, nonhearsay, purpose.

No. 32734-5-III
*State v. Barrett*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.