IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

In the Matter of the Detention of      )
                                       )     No. 32555-5-III
RONALD D. LOVE,                        )
                                       )
                                       )
          Appellant.                   )     UNPUBLISHED OPINION

KORSMO, J. — Ronald Love appeals from a jury's determination that he remains a sexually violent predator (SVP) despite his evidence to the contrary. We conclude that there were no evidentiary errors of consequence and that the evidence supported the jury's verdict. We thus affirm.

FACTS

Mr. Love was originally committed as a sexually violent predator in 2005. Evidence adduced at that trial included a recitation of Mr. Love's history of sexually violent assaults committed in California during the 1970s. In 1973, Mr. Love, then 16, was convicted of attempting to rape a six-year-old. Two years later he sodomized a juvenile male and attempted to rape a juvenile female. In 1978, he and some accomplices attempted to kidnap a 16-year-old; that incident did not lead to a criminal prosecution. Later that year, in separate incidents he raped two women on the same night. He pleaded

guilty to one count of forcible rape for each of the two women. After release from custody in California he moved to Pasco. In 1991, Mr. Love was convicted of attempting to rape a 19-year-old boy.

SVP proceedings were filed in 2005 as Mr. Love was nearing the end of his Washington prison sentence. That matter proceeded to a bench trial. Among the evidence considered at trial was the testimony of A.P., one of the 1978 rape victims. She traveled to Pasco from Puerto Rico to describe Mr. Love's entry into her home and ensuing sexual assault. After considering expert testimony and the testimony of some of the victims, the court found that Mr. Love was a sexually violent predator and committed him to the Special Offender Center.

In 2013, Mr. Love brought a petition for an evidentiary hearing, asserting he no longer met the requirements to be considered an SVP. Clerk's Papers (CP) at 805. To support that petition he presented declarations from Dr. Robert Halon and Brad Mix, a Native American Healer, indicating that during his commitment, he had been an active participant in Native American culture, rituals, and healing, that serve as equivalents to treatment, and that through those programs he has gained control over his impulses and eliminated his antisocial behaviors. He also submitted evidence of increasing health problems. The court granted a new trial after determining Mr. Love presented probable cause that he no longer met the definition of an SVP.

In the ensuing trial, the State presented evidence from Dr. Amy Phenix concerning Mr. Love's past crimes as well as her psychological assessment of him. She diagnosed Mr. Love with alcohol dependence, rape paraphilia, and antisocial personality disorder. She gave substantial information about all three of these disorders; her ultimate conclusion was that they worked in combination to render him dangerous to the community. She also applied several actuarial instruments to Mr. Love, including a dynamic risk assessment, the Structured Risk Assessment-Forensic Version (SRA-FV), and concluded he was more likely than not to commit future acts of sexual violence.

In his defense, Mr. Love presented evidence from psychologists challenging the bases for Dr. Phenix's diagnoses and assessment that he was likely to reoffend, evidence from Native leaders involved in religious and healing practices at the commitment center to the effect that he was no longer likely to engage in criminal activities, and medical evidence that his current physical state made it unlikely he would engage in acts of violence. He also testified in his own defense and denied ever having committed any acts of sexual violence. He also asserted he had only pleaded guilty as part of plea deals to get reduced charges on non-sexual, violent crimes that he did commit. He also testified that A.P. had been a prostitute.[1]

---

[1] A.P. testified in the 2005 trial that she had worked for the Superior Court and the District Attorney in Modesto, California at the time of the attack.

3

Apparently surprised by Mr. Love's testimony, the State offered the previous testimony of A.P. to rebut it. The defense objected on the basis that the testimony was cumulative to that of Dr. Phenix, who already had described the incident, and that the State had made no effort to seek A.P.'s presence from Puerto Rico before offering the transcript of her previous testimony. The State argued that A.P. lived in Puerto Rico and was therefore unavailable because she was not amenable to a subpoena. The trial judge admitted the testimony.

The court instructed the jury that to commit Mr. Love as a sexually violent predator, it needed to find that he had previously been found to be an SVP, he continued to suffer from "a mental abnormality or personality disorder" that made it difficult to control his sexually violent behavior, and that the "mental abnormality or personality disorder" continues to make it more likely that he would reoffend. CP at 16. Defense counsel did not object to instruction 5 and had proposed an instruction containing similar language. CP at 64.

The jury returned a verdict that Mr. Love remained an SVP. CP at 8. The court entered an order committing Mr. Love to the Special Offender Center. CP at 7. Mr. Love then timely appealed to this court.

## ANALYSIS

This appeal raises multiple challenges that we address as three issues, but the only two discussed in any detail involve Mr. Love's challenges to the sufficiency of the

evidence and use of the prior testimony of A.P. After briefly discussing general principles governing review of SVP cases and Mr. Love's challenge to the SRA-FV dynamic risk assessment tool, we then address the sufficiency of the evidence and A.P.'s testimony.

Appellate courts apply the criminal standard to sufficiency challenges made to SVP civil commitments. *In re Det. of Thorell*, 149 Wn.2d 724, 744, 72 P.3d 708 (2003), *cert. denied*, 541 U.S. 990 (2004). A commitment order is reviewed to see if, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the State has proven each required element beyond a reasonable doubt. *Id.* A claim of insufficiency admits the truth of the State's evidence, along with all reasonable inferences that may be drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

An SVP is someone "who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). A "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(8). A mental abnormality, when coupled with an individual's history of sexually predatory acts, supports the conclusion

5

that the person has serious difficulty controlling his or her behavior. *Thorell*, 149 Wn.2d at 742.

The one issue we summarily address is the challenge to Dr. Phenix's use of the SRA-FV to support her opinion that Mr. Love continued to be an SVP. This court has concluded that the test satisfies the standard of *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923). *See In re Det. of Ritter*, 192 Wn. App. 493, __ P.3d __ (2016); *In re Det. of Pettis*, 188 Wn. App. 198, 352 P.3d 841, *review denied*, 184 Wn.2d 1025 (2015). We will not revisit those decisions.

*Sufficiency of the Evidence*

Mr. Love's primary remaining contention is a claim that the evidence is not sufficient to support the jury's verdict given the instructions. His challenge combines a traditional sufficiency of the evidence argument with a law of the case argument predicated on his construction of the definition of the term "sexually violent predator." As the Washington Supreme Court did nearly a quarter century earlier, we reject his reading of the statutory language[2] and conclude that the evidence did support the jury's verdict.[3]

---

[2] Although cast as a jury instructional issue, his true challenge is to the construction of the statute since the challenged aspect of the jury instruction merely recites the statutory definition.

[3] In light of our conclusion, we need not address the State's argument that Mr. Love invited the alleged error or his rejoinder that counsel performed ineffectively by proposing similar language. There was no instructional error.

"Sexually violent predator" is defined as a person "who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). The elements instruction provided to the jury largely tracked this definition. CP at 16. In particular, the second element required the jury to find that Mr. Love "continues to suffer from a mental abnormality <u>or</u> personality disorder." *Id.* (emphasis added). Mr. Love contends that use of the word "or" renders the evidence insufficient to support the verdict because Dr. Phenix testified it was the *combination* of Mr. Love's mental abnormalities and personality disorders, rather than a single one of them, that established his future dangerousness.

This argument is largely semantic, but it turns on a not uncommon problem of construing the meaning of the word "or." In common English usage, the word "or" can be either exclusive or inclusive. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 528, 243 P.3d 1283 (2010). The meaning of the term typically is derived from the context in which it is used. *Id.* Mr. Love argues that the instruction (and hence the statute) apply an exclusive "or," but the Washington Supreme Court already has construed this statutory language as meaning "and." *In re Det. of Young*, 122 Wn.2d 1, 58, 857 P.2d 989 (1993) *superseded by statute on other grounds as stated in In re the Det. of Thorell*, 149 Wn.2d at 746. The terms "mental abnormality" and "personality

7

disorder" are both defined by statute, and nothing indicates that an individual might not suffer from both. *Young* recognizes that both can work in conjunction to satisfy the statutory definition.[4] *Id.* Consequently, evidence that the combination of Mr. Love's personality disorders and his mental abnormalities made it likely that he would commit future acts of sexual violence was properly considered by the jury.

Thus viewed, the evidence was sufficient to support the jury's verdict. The evidence established that Mr. Love had previously been found to be an SVP. There was testimony from Dr. Phenix that he continues to suffer from mental abnormalities and personality disorders. She also opined that the combination of Mr. Love's current problems made it likely that he still will engage in acts of predatory sexual violence. The jury was free to credit that testimony and therefore find that each of the statutory elements was proven.

The evidence supported the jury's verdict.

---

[4] The Legislature intended that all dangerous sex offenders be incapacitated and treated. Frequently . . . an individual will suffer from multiple mental abnormalities and personality disorders which make violent rape likely. It would thwart the legislative purpose if the Statute only allowed the commitment of those who suffer from one or the other, while prohibiting the commitment of more seriously afflicted sexually violent predators.

*In re the Det. of Young*, 122 Wn.2d at 58.

8

*Admission of Prior Testimony of A.P.*

Mr. Love also argues that the trial court committed error when it admitted the

transcript of A.P.'s testimony from the first trial. If error, it was harmless.

Typically, rulings admitting or excluding evidence are reviewed for an abuse of

discretion. *In re Det. of Duncan*, 167 Wn.2d 398, 402, 219 P.3d 666 (2009). Discretion

is abused when it is exercised on untenable grounds or for untenable reasons. *State ex*

*rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Error in the admission of

evidence is harmless if "within reasonable probabilities" it did not affect the outcome of

the trial. *State v. Zwicker*, 105 Wn.2d 228, 243, 713 P.2d 1101 (1986).[5]

Former testimony is exempted from the reach of the hearsay rule if the witness is

unavailable and the opposing party previously had the opportunity to develop the

testimony. ER 804(b)(1). A declarant is unavailable if she is absent from the

proceedings and the proponent was not able to procure her attendance. ER 804(a)(5). In

addition, a deposition is admissible if the witness resides out of the county more than 20

miles from the site of the trial. CR 32(a)(3).

---

[5] Even constitutional error, such as the omission of an element from a "to convict" instruction, is harmless error if it is clear beyond a reasonable doubt that the error did not contribute to the verdict. *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)); *State v. Thomas*, 150 Wn.2d 821, 845, 83 P.3d 970 (2004).

Given that A.P. lived in Puerto Rico and could not be subpoenaed, the State contends she was unavailable. Additionally, the State contends any error was harmless since (1) her deposition governing the same discussion of the facts of the 1978 case could have been used, and (2) the substance of those facts were already before the jury from the testimony of Dr. Phenix. We agree that A.P.'s substantive description of the event was not critical to the outcome of this action.

First, we note that while A.P. was outside the subpoena power of the court, the rule still requires the State as proponent of the testimony to make a good faith effort to secure the voluntary attendance of the witness. *Rice v. Janovich*, 109 Wn.2d 48, 57, 742 P.2d 1230 (1987). Given that A.P. did appear to testify at the 2005 SVP trial, there certainly was the possibility that she would voluntarily appear if asked, even though the mid-trial request would not have amounted to much advance notice.

Nonetheless, any error was harmless for the reasons noted. The evidence could have been admitted through the prior deposition, making the problem merely one of form rather than substance. While A.P.'s version of the events was already before the jury through Dr. Phenix, that evidence was admitted for the limited purpose of explaining Dr. Phenix's evaluation of Mr. Love. ER 703. Here, the primary purpose of using A.P.'s testimony was to rebut Mr. Love's new version of the 1978 attack. The only element seriously at issue in this trial was whether Mr. Love was currently dangerous or not in

10

light of his progress in treatment. The 1978 incident did not seriously impact the jury's ultimate decision in this case.

Accordingly, we conclude that the error was harmless since it did not realistically impact the verdict. The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, C.J.

Pennell, J.