IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34974-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS JEFFERSON KEYS III, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Thomas Jefferson Keys III was convicted of 11 felony offenses

and 1 gross misdemeanor offense, many of which arose when he ran a police blockade.

We affirm the convictions and remand for correction of the judgment and sentence.

FACTS

Mr. Keys was convicted of first degree robbery, three counts of first degree assault

of three law enforcement officers, three counts of second degree assault of the same

victims, first degree malicious mischief, attempting to elude a police vehicle, hit and run

injury accident, theft of a motor vehicle, and attempting to injure a police dog. The six

assault counts, the malicious mischief, and the attempted dog injury charge arose when

Mr. Keys drove a stolen car at and then through a police blockade, disabling a patrol car, leading one officer to fire several shots at him, and sending three of the officers running for safety. They are the counts at the center of the disputed issue in the case.[1]

One of the assault victims was Officer Miranda Skeeter. She was on the county prosecutor's *Brady*[2] list. That fact was disclosed to the defense prior to trial. The four officers at the scene described the incident in similar terms. Officer Skeeter provided one piece of additional information that the other witnesses did not report. Skeeter indicated that the driver was "laughing" when he drove at the officers.

The defense cross examined Officer Skeeter concerning the "laughing" testimony, asking numerous questions about the testimony in an attempt to show that she could not have made the observation while fleeing the oncoming vehicle. The defense later sought to call a deputy prosecuting attorney to testify concerning Officer Skeeter's reputation for untruthfulness in the Vancouver law enforcement community.

---

[1] The trial court dismissed two assault counts involving a fourth officer who was off to the side and was not endangered when Mr. Keys ran the blockade.

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The primary holding in *Brady* was that the prosecution has a duty to turn over all exculpatory evidence in its possession. In this context, placement on a *Brady* list means that the prosecutor believes potential impeachment evidence exists that must be disclosed to the defense. *See, e.g.*, Mary Ellen Reimund, *Are* Brady *Lists (aka Liar's Lists) the Scarlet Letter for Law Enforcement Officers? A Need for Expansion and Uniformity*, 3 INT'L JOURNAL HUMAN. & SOC. SCI. 1 (2013).

The defense put the deputy prosecutor on the stand and made an offer of proof outside the presence of the jury. The witness testified that she had spoken with around 30 people concerning Officer Skeeter's truthfulness and that the officer's reputation was poor. The witness also admitted on cross-examination that she had never used the word "reputation" in her discussions with the 30 people.

After hearing the proffer, the trial judge rejected the proposed testimony. Recognizing that a specialized community could hold knowledge of a witness's reputation, the trial judge found that "the evidence here does not indicate that the witness is aware of reputation as that term is used." The court noted that the deputy prosecutor "is aware that a number of other people have concerns about Officer Skeeter's truthfulness, but I cannot tell from the offer of proof that it's based on reputation. It appears it isn't based on general reputation."

The defense then rested without calling any witnesses. The jury returned the verdicts previously noted. At sentencing, the court vacated the three second degree assault convictions. Those convictions were listed on the judgment and sentence form, with a line drawn through each of the three and the word "vacated" next to each listing. The form also includes preprinted figures for the filing fee and a jury demand fee, but neither figure was carried over to the total line for that category. The court orally indicated that it was not imposing any discretionary court costs.

Mr. Keys timely appealed.

3

## ANALYSIS

The sole substantive challenge is to the exclusion of the proposed reputation testimony. The parties agree the matter should be remanded for correction of errors in the judgment and sentence form. We will discuss the evidentiary issue before turning, quite briefly, to the sentencing matter. In light of the State's indication that it will not be seeking costs on appeal, we need not consider Mr. Keys' request to waive appellate costs.

This court reviews the trial court's evidentiary rulings for abuse of discretion. *State v. Guloy*, 104 Wn.2d 412, 429-430, 705 P.2d 1182 (1985). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

ER 608(b) provides in essence that a party may not attack the credibility of a witness by extrinsic evidence of prior conduct, but the witness may be cross-examined as to her character for truthfulness or untruthfulness. ER 608(a) similarly allows reputation testimony concerning a witness's character trait of truthfulness or untruthfulness. To offer such testimony, the proponent of the reputation testimony generally must satisfy a five factor test. *State v. Lord*, 117 Wn.2d 829, 873, 822 P.2d 177 (1991). The five elements are:

> "The first element is the foundation for the testimony—the knowledge of the reputation of the witness attacked. Second, the impeaching testimony must be limited to the witness's reputation for truth and veracity and may not relate to the witness's general, overall reputation. Third, the questions must be confined to the reputation of the witness in his

community . . . Fourth, the reputation at issue must not be remote in time from the time of the trial. Finally, the belief of the witness must be based upon the reputation to which he has testified and not upon his individual opinion."

*Id.* (quoting 5A Karl B. Tegland, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 231, at 202-04 (3d ed. 1989).

The trial court applied the test and was satisfied that the first four factors were established. The proffer foundered on the final factor. The trial court was concerned that the witness had discussed specific instances of untruthfulness with others rather than Officer Skeeter's reputation evidence. In other words, the proffer was essentially improper ER 608(b) prior acts evidence rather than proper ER 608(a) reputation evidence. This is a tenable basis for rejecting the testimony.

But even if the proffer had been sufficient, the exclusion of the testimony was not harmful error. Evidentiary error, like other forms of nonconstitutional error, is harmless if, within reasonable probability, it did not affect the verdict. *State v. Zwicker*, 105 Wn.2d 228, 243, 713 P.2d 1101 (1986). We are confident that was the situation here.

Four officers described the incident in similar terms, and the physical evidence certainly bore out the fact that a violent collision had occurred when Mr. Keys broke through the blockade. That evidence amply supported convictions for first degree assault. Although Mr. Keys argues the "laughing" comment was central to the State's case, that was not the situation. In closing, the prosecutor said Skeeter had the worst

recollection of the group since she was the first officer to flee to safety.[3] Although he mentioned her "laughing" comment while briefly summarizing her testimony, he did not argue that evidence in his discussion of the defendant's intent when attacking the officers. Instead, the prosecutor focused on the driving, emphasizing the speed of the car and that it was driven at the three officers, all of whom barely escaped. A witness who observed the incident from his house likewise believed that the driver barely missed the officers. Additionally, defense counsel handled the "laughing" testimony professionally, contrasting that observation with those of the other officers who had a better opportunity to see what was happening.

If there was error in failing to allow further impeachment of Officer Skeeter, it did not amount to anything of significance in this contest because the "laughing" comment was an insignificant portion of the case. Any error was harmless.

The parties agree that the judgment and sentence form contains several errors that require correction and jointly request that we remand to the trial court. Since there is uncertainty about the financial obligations imposed, we agree that a remand is appropriate.

---

[3] One of the other officers stood her ground to fire at the approaching vehicle before moving to safety, while another officer had to get his canine out of the car before Keys struck it. The fourth officer was to the side and did not need to retreat.

No. 34974-8-III
*State v. Keys*

The convictions are affirmed. The case is remanded to the trial court for correction of errors in the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Siddoway, J.

Lawrence-Berrey, A.C.J.

7